AMANDA DIXON TUCKER AND JIMMY L. HODGES AND BECKY J. HODGES v. THE MECKLENBURG COUNTY ZONING BOARD OF ADJUSTMENT, MARSHALL GUS THOMAS, JR. AND RHONDA GOLDEN-THOMAS

No. COA00-1426

(Filed 28 December 2001)

**Zoning— multi-family residential—dog kennel**

The trial court erred by reversing the Mecklenburg County Zoning Board of Adjustment's decision determining that respondents' dog kennel is a private kennel and not a commercial kennel, and is thus allowable in a district zoned multi-family residential under the pertinent ordinance, because a de novo review reveals

---

TUCKER v. MECKLENBURG CTY. ZONING BD. OF ADJUST.

[148 N.C. App. 52 (2001)]

that: (1) the Board's determination that requesting a donation and attaching conditions regarding the care of the dog at the time of adoption does not constitute a sale and is not arbitrary or a manifest error of law; and (2) even though respondents purchased the lot with the operation of a kennel in mind, a private kennel is a permitted accessory use as long as it complies with certain regulations.

Judge GREENE dissenting.

Appeal by respondents Marshall Gus Thomas, Jr. and Rhonda Golden-Thomas from judgment entered 31 July 2000 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 October 2001.

*Kennedy, Covington, Lobdell & Hickman, L.L.P., by John H. Carmichael, for petitioner-appellees.*

*Ruff, Bond, Cobb, Wade & Bethune, L.L.P., by James O. Cobb, for respondent-appellee.*

*Nelson, Mullins, Riley & Scarborough, L.L.P, by Paul J. Osowski, for the respondent-appellants.*

THOMAS, Judge.

Respondents, Marshall Gus Thomas, Jr. and Rhonda Golden-Thomas, appeal the trial court's reversal of a decision by the Mecklenburg County Zoning Board of Adjustment (Board).

The Board determined that respondents' kennel is not a "commercial kennel" and is thus allowable in a district zoned multi-family residential under the Mecklenburg County Zoning Ordinance (Ordinance). The trial court, finding the kennel to be commercial, reversed the Board's decision and issued a cease and desist order. We reverse the decision of the trial court.

The pertinent facts are as follows: Respondents established Project HALO Corporation (HALO) as a non-profit organization with the primary goal being the rescue of stray and unwanted dogs. Respondents, who pay the county licensing and registration fees and taxes, own all of the animals in their kennel. HALO then pays all expenses associated with caring for the dogs. On average, respondents keep approximately ten to fifteen dogs in pens located between their residence and the rear lot line.

Some of the dogs are eventually adopted, and those taking the animals sign an adoption contract. The contract includes provisions requiring the adoptive family to establish regular contact with a veterinarian, provide the animal with health check-ups, inoculations, and heartworm treatment. The new owner also must notify HALO if the animal is no longer wanted. The contract provides that ownership of the animal "reverts to Project: H.A.L.O." if the conditions are not met. Despite this provision, we note that at the time of adoption, respondents, and not HALO, legally own the dogs. In addition, a donation to HALO is requested but not required.

In March of 1999, a zoning enforcement code inspector with the Mecklenburg County Engineering and Building Standards Department conducted an inspection of the kennel and concluded it was in violation of the ordinance. The inspector issued a notice of violation, and respondents appealed to the Mecklenburg County Zoning Board of Adjustment. After a hearing, the Board reversed the inspector's decision by a 5-1 vote and ruled that respondents operate a private kennel that is permitted as an accessory use in the multi-family zoning district.

Petitioners, Amanda Dixon Tucker, Jimmy L. Hodges, and Becky J. Hodges, neighbors of respondents, filed a petition in superior court for writs of certiorari and mandamus and a decree of mandatory injunction. The trial court reversed the Board, finding that respondents do operate a commercial kennel in violation of the zoning ordinance. Respondents appeal.

I. Scope and Standard of Review

A. Initial Reviewing Court

Judicial review of town decisions is provided for in N.C. Gen. Stat. § 160A-388(e): "Every decision of the board shall be subject to review by the superior court by proceedings in the nature of certiorari." N.C. Gen. Stat. § 160A-388(e) (1999). Although the North Carolina Administrative Procedure Act (APA) expressly excludes from its purview the decisions of local municipalities, "[w]e cannot believe that our legislature intended that persons subject to a zoning decision of a town board would be denied judicial review of the standard and scope we have come to expect under the North Carolina APA." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 624, 265 S.E.2d 379, 382, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). Accordingly, our Supreme Court extrapolated from the Act in determining the task of the initial reviewing court:

(1) reviewing the record for errors of law;

(2) ensuring that procedures specified by law in both statute and ordinance are followed;

(3) ensuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents;

(4) ensuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record; and,

(5) ensuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383.

The proper standard of review for the superior court depends on the particular nature of the issues presented on appeal. *See In re Appeal of Willis*, 129 N.C. App. 499, 501, 500 S.E.2d 723, 725 (1998). When the petitioner correctly contends that the agency's decision was either unsupported by the evidence or arbitrary and capricious, the appropriate standard of review for the initial reviewing court is "whole record" review. *Id.* (citing *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993)). If, however, petitioner properly alleges that the agency's decision was based on error of law, *de novo* review is required. *Id.*

*De novo* review requires a court to consider the question anew, as if not considered or decided by the agency or, as here, the local zoning board. *Id.* (citing *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994)). The "whole record" test requires the reviewing court to examine all competent evidence (the "whole record") to determine whether the board's decision is supported by substantial evidence. *Id.* A reviewing court may use more than one standard of review if the nature of the issues raised so requires. *See Willis*, 129 N.C. App. at 502, 500 S.E.2d at 726.

## B. Appellate Review

On review of a superior court order regarding a board's decision, this Court examines the trial court's order for error of law by determining whether the superior court: (1) exercised the proper scope of review, and (2) correctly applied this scope of review. *Id.* at 501-02, 500 S.E.2d at 726 (stating that, although our Supreme Court articu-

lated this two-step process for *agency* decisions, "[w]e believe appellate review of a superior court judgment on writ of certiorari regarding the action of a quasi-judicial body (such as the Board herein), being derivative of the power of the superior court to review the action . . . is "likewise governed by analogy to the APA.") (internal quotations omitted). Further, this Court determines the actual nature of the contended error and then proceeds with an application of the proper standard of review. *Id.* at 501, 500 S.E.2d at 725-26.

Here, the parties presented arguments to the superior court regarding: (1) whether the Board's determination that respondents operated a private kennel is an error of law; (2) whether the Board's decision is not supported by substantial evidence in the whole record; and (3) whether the Board's decision is arbitrary and capricious.

The superior court states in its order that, regarding issues (2) and (3) above, the proper standard of review is a whole record review. After finding that the odor, noise, and increased traffic caused by the dogs impairs the use and enjoyment of petitioners' properties and makes it difficult for them to sleep, the superior court concluded that the Board's decision was not supported by competent, material and substantial evidence, and that it was arbitrary and capricious.

The standard the superior court applied to issue (1) is not as clear. The court stated in its order that, "the Board's conclusion that the kennel operated on [respondents'] [p]roperty is a private kennel . . . is a question of interpretation and as such, it is subject to review by this [c]ourt." The court then concluded the Board's decision on this issue is "erroneous."

Because the *actual* nature of the contended error in this case is a question of law, we apply review *de novo. See Willis,* 129 N.C. App. at 501, 500 S.E.2d at 725 (errors of law require *de novo* review); *see also Amanini,* 114 N.C. App. at 675, 443 S.E.2d at 118 (where the initial reviewing court should have conducted *de novo* review, this Court will directly review the [quasi-judicial] decision under a *de novo* review). All parties here agree that respondents operate a kennel in a multi-family district, and that the kennel complies with the technical requirements of an accessory use. The error each party assigns is with respect to the interpretations of "private kennel" and "commercial kennel," and to a lesser extent, "principal use" and "accessory use." Thus, the sole issue presented is whether the Board correctly interpreted definitions in the zoning ordinance in determining that

respondents operate a private kennel as a permitted accessory use, and the proper standard of review is *de novo* review.

We note initially that the function of a board of adjustment is to interpret local zoning ordinances. *CG & T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 39, 411 S.E.2d 655, 659 (1992). Some deference is given to the board's interpretation of its own city code. *Id.* Therefore, on review we do not determine whether another interpretation might reasonably have been reached by the Board, but whether the Board acted arbitrarily, oppressively, manifestly abused its authority, or committed an error of law. *Taylor Home of Charlotte v. City of Charlotte*, 116 N.C. App. 188, 193, 447 S.E.2d 438, 442, *disc. review denied*, 338 N.C. 524, 453 S.E.2d 170 (1994).

## II. Analysis

The Board here determined that, under the Ordinance, respondents operate a private kennel permitted as an accessory use in the multi-family zoning district. Section 12.410 of the Ordinance provides that a private kennel is permitted as an accessory use if it meets the following conditions:

(1) [The kennel] is . . . located between the principal structure and rear lot line, shall occupy no more than 20 percent of the rear yard and shall be located no closer than 10 feet to any side lot line.

(2) Extensions of or additions to property line fences to confine animals to a part of the property abutting the lot line shall not be permitted.

(3) No such accessory use shall be operated for commercial purposes.

Petitioners do not contend the kennel violates (1) or (2) of the foregoing requirements. Rather, they argue that the kennel is a commercial kennel and therefore not permitted under the Ordinance. A commercial kennel is defined in the Ordinance as:

A use or structure intended and used for the breeding or storage of animals for sale or for the training or overnight boarding of animals for persons other than the occupant of the lot.

A private kennel is defined as:

A structure used by the occupant of the property for the outdoor storage of animals and not operated on a commercial basis.

"Private kennel" is defined broadly and in the negative, as a kennel that is "not operated on a commercial basis." At the hearing, the Board noted that respondents' kennel, operated by a non-profit organization, fits the definition of private kennel, because "commercial use" is defined under the Ordinance as an "enterprise that's carried on for profit." The Board also heard evidence pertaining to the definition of "commercial kennel." The Ordinance has no other definition for the outdoor storage of animals, such as an animal shelter. If respondents' kennel does not meet the requirements of a commercial kennel, by default it falls under the definition of "private kennel."

Among the Board's findings of facts were the following:

(1) There is no breeding, selling, storage of animals for sale, grooming, training, or overnight boarding of the animals.

(2) Does meet[] the private kennel definition and the requirements of the Zoning Ordinance set forth in Section 12.410.

(3) The animals kept on the residence are cared for by the Thomas[es] on behalf of Project Halo, a non-profit organization, for which donations are accepted.

(4) The Thomas[es] own the animals, and pay the County licensing tax fee for every dog.

(5) The Applicant[s] ha[ve] over three acres as their principal residence and operate[] the kennel on site as an accessory use.

(6) Code Section 12.410 Requires—The private kennel use occupies less than 20% of the rear yard. The property complies with this provision.

Respondents contend the Board correctly decided that the kennel is not commercial because there is no evidence that it is used for "the breeding or storage of animals for sale." The dogs are not sold. They are either adopted or they are kept by respondents. A donation is *requested* of adoptive families to defray maintenance expenses. Respondents further argue there is no evidence that the kennel is used for "training or overnight boarding of animals for persons other than the occupant of the lot." They own the dogs unless the dogs are adopted, and at that point the dogs do not return to the kennel to be fed and housed.

Petitioners, on the contrary, contend the judgment of the trial court was correct because the kennel houses numerous dogs, causes

TUCKER v. MECKLENBURG CTY. ZONING BD. OF ADJUST.

[148 N.C. App. 52 (2001)]

increased traffic by attracting customers and volunteers to the property, has a brochure, and utilizes an adoption contract. In essence, petitioners argue that because the kennel exhibits some of the characteristics of a commercial kennel, the Board's decision that the kennel is private is erroneous. Petitioners also contend that the storage of dogs with the intent to find an adoptive family is equivalent to "storage for sale" as set forth in the definition of a commercial kennel. Applying a *de novo* review, we note that the dictionary supports the Board's interpretation that "sale" does not include the transfer of the dog from respondents to a new owner. "Sale" is defined as "the act of selling: a contract transferring the absolute or general ownership of property from one person or corporate body to another for a price (as a sum of money or any other consideration) . . . distinguished from a gift." *Merriam Webster's Third New International Dictionary* 2003 (1968). A gift is "a voluntary transfer of real or personal property without any consideration or without a valuable consideration—distinguished from a sale." *Id.* at 956. An adoptive family is not required to give an amount of money in exchange for a dog. The adoption contract, however, does require that the adoptive family provide certain services and refrain from certain conduct regarding the dog's care. Upon failure to do so, the contract provides that ownership of the dog reverts back to HALO.

The Board may have characterized this transaction as a conditional gift, a partial gift, or may have determined that "sale" requires the exchange of money. In whichever case, the determination is not arbitrary or a manifest error of law. Based on the definitions of "sale," "gift," and the evidence presented at the Board hearing, the Board's determination that requesting a donation and attaching conditions regarding the care of the dog at the time of adoption does not constitute a sale, is far from arbitrary or a manifest error of law.

Petitioners also argue that even though respondents reside on the property, the kennel is the lot's principal use, or "the primary purpose or function that a lot serves," and therefore the kennel is not permitted as an accessory use even if it is not commercial. The only evidence petitioners advance in support of this argument is that the respondents purchased the lot with the operation of a kennel in mind. Under the Ordinance, however, a private kennel is a permitted accessory use as long as it complies with certain regulations. Petitioners do not contend that the kennel violates these regulations. We uphold the Board's determination that the kennel is an accessory use of respondents' residential lot.

Accordingly, we hold that the Board's interpretation of the Ordinance is not affected by error of law. Under the Mecklenburg County Zoning Ordinance, respondents' kennel is a private kennel that meets the requirements of a permitted accessory use. The order of the trial court is therefore reversed.

REVERSED.

Judge HUNTER concurs.

Judge GREENE dissents.

GREENE, Judge, dissenting.

As I believe the dog kennel operated by respondents was a commercial kennel, I dissent.

Because the facts are not in dispute, the issue of whether respondents' dog kennel was either a private or a commercial kennel presents a question of law and is reviewable *de novo* by this Court. *See Ayers v. Bd. of Adjustment for Town of Robersonville*, 113 N.C. App. 528, 530, 439 S.E.2d 199, 201, *disc. review denied*, 336 N.C. 71, 445 S.E.2d 28 (1994). If the decision of the Board constitutes an error of law, that decision must be reversed. *Id.* at 531, 439 S.E.2d at 201. Construction of an ordinance by a board is entitled to "some deference," provided, however, the construction is "within the bounds of the law." *CG&T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 39, 41, 411 S.E.2d 655, 659-60 (1992).

In this case, a commercial kennel is defined in the Ordinance as one "used for the breeding or storage of animals for sale or for the training or overnight boarding of animals for persons other than the occupant of the lot." Mecklenburg County, N.C., Mecklenburg County Zoning Ordinance § 2.201 (Jan. 1992) [hereinafter Ordinance]. A private kennel is defined as one "not operated on a commercial basis." *Id.*

Because respondents own the dogs until the time of their adoption, the determinative issue is thus whether respondents kept the dogs "for sale."[1] I agree with the majority's definition of "sale" as a

---

1. I acknowledge the Ordinance does define the term "commercial use" as "[a]n occupation, employment, or enterprise that is carried on for profit by the owner." Ordinance § 2.201. This term is not used in the kennel section of the Ordinance, although it is used in other sections. For example, the Ordinance defines a boarding

"contract transferring the absolute or general ownership of property from one person or corporate body to another for a price (as a sum of money or any other consideration)." *Meriam Webster's Third New International Dictionary* 2003 (1968). Because the dogs were held for adoption and the persons adopting the dogs were required to abide by numerous provisions contained in an "Adoption Contract" (the contract),[2] consideration was given in exchange for receipt of the dogs. *See Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 147, 139 S.E.2d 362, 368 (1964) (any benefit or right to the promisor or any forbearance, detriment, or loss to the promisee is valid consideration). Accordingly, the dogs were kept "for sale," which qualifies the kennel as a "commercial" kennel. Thus, the Board's decision to the contrary was not within the bounds of the law. *See CG&T*, 105 N.C. App. at 41, 411 S.E.2d at 660. Consequently, the trial court correctly reversed the decision of the Board, and the trial court's decision should be affirmed.

---

stable as "[a] building in which horses are kept for *commercial use* including boarding, hire, sale or show." *Id.* (emphasis added). As the kennel section of the Ordinance has its own definition for "commercial," it is not appropriate to use the "commercial use" definition to determine the meaning of a "commercial" kennel.

2. The contract employed by respondents reads in pertinent part: "In consideration of a donation of $_____ . . . HALO agrees to deliver unto the Adopter, the following described animal." In addition, the contract contains numerous conditions, failure of which to comply with reverts ownership to HALO at its election. The animal must be spayed or neutered within a certain time frame; regular contact with a veterinarian is required, including provision of health check-ups, inoculations, and heartworm prevention; the Adopter must agree never to abandon the animal, release the animal to a pound, or permit the animal's use in scientific experiments; the Adopter must provide a suitable fenced yard and may never tie or chain an outdoor dog; the Adopter must not place the animal in the back of an open vehicle; HALO has the right to inspect the Adopter's home and surroundings before and *after* the adoption and can remove the animal immediately upon finding unsuitable conditions; if the Adopter no longer wishes to keep the animal, the Adopter cannot place the animal with someone else but must give it back to HALO; finally, if the animal is ever picked up by animal control, ownership automatically reverts to HALO.