HOWARD C. JONES, II; FRANKIE HAYES SOUTHARD; JIMMY ROY ROGERS AND WIFE, MADILYN KAY ROGERS; GREGORY E. BOWERS AND WIFE, NATALIE W. BOWERS; AND DANIEL RAY SAMMONS AND WIFE, SHARON P. SAMMONS, PLAINTIFFS V. ROBERT WAYNE DAVIS AND WIFE, GLENDA K. DAVIS; JERRY ALLAN ALLRED AND WIFE, YVONNE DAVIS ALLRED, AND SURRY COUNTY, DEFENDANTS

No. COA03-594

(Filed 20 April 2004)

## 1. Zoning— subdivision ordinance—leasing of lots—mobile homes

A county subdivision ordinance which defined subdivision as the division of land "for the purpose of sale or building development" allowed a tract of land to be divided into lots to be leased by the landowners to third parties for the placement of mobile homes thereon.

## 2. Zoning— manufactured home ordinance—unsubdivided land

A manufactured home park ordinance did not prohibit subdivision owners from leasing lots to third parties for placement of mobile homes thereon because the ordinance applied only to a tract of unsubdivided land.

## 3. Zoning— subdivision ordinance—use of land not regulated

A county subdivision ordinance which provided that subdivisions and lots created thereunder "must comply with all applicable local and state laws, including any zoning ordinance which may apply to the area to be subdivided" does not regulate the use of land and thus does not prohibit subdivision lots from being leased to third parties for the placement of mobile homes thereon.

Judge WYNN dissenting.

Appeal by plaintiffs from order entered 10 February 2003 and judgment entered 11 February 2003 by Judge John O. Craig, III, in Surry County Superior Court. Heard in the Court of Appeals 3 February 2004.

*Elizabeth Horton, Urs R. Gsteiger, and Howard C. Jones, II, for plaintiffs-appellants.*

*Finger, Parker, Avram & Roemer, L.L.P., by Raymond A. Parker, for defendants-appellees Robert Wayne Davis, and wife, Glenda K. Davis, and Jerry Allan Allred, and wife, Yvonne Davis Allred.*

*Folger and Folger, by Fred Folger, Jr., for defendant-appellee Surry County.*

TYSON, Judge.

Howard C. Jones, II, Frankie Hayes Southard, Jimmy Roy Rogers, Madilyn Kay Rogers, Gregory E. Bowers, Natalie W. Bowers, Daniel Ray Sammons, and Sharon P. Sammons (collectively, "plaintiffs") appeal from the trial court's order granting summary judgment to Robert Wayne Davis ("Davis"), Glenda K. Davis, Jerry Allan Allred, and Yvonne Davis Allred (collectively, "defendants") and the judgment entered following this order in favor of defendants. We affirm.

## I.  Background

The parties stipulated to the majority of facts found by the trial court. Defendants are owners of approximately forty-one acres of land in Surry County, North Carolina. Plaintiffs are property owners who live in close proximity to defendants' property. One of the defendants, Davis, submitted an application to the Surry County Planning Board ("Planning Board") for approval of a manufactured home park pursuant to the Surry County Manufactured Home and Manufactured Home Park Ordinance ("Manufactured Home Park Ordinance") in September 1997. Defendants took no further steps to have that application considered or approved.

In November 1997, Davis submitted a preliminary subdivision plat of approximately twenty acres ("Section One of Kaye's Subdivision") of defendants' property pursuant to the Surry County Subdivision Ordinance for approval as a homeowners' association subdivision to the Planning Board. The Planning Board preliminarily approved Section One of Kaye's Subdivision on 8 December 1997. The Surry County Board of Commissioners ("County Commissioners")

approved the plat on 15 December 1997. Section One of Kaye's Subdivision contains twenty lots. The plat was never recorded.

Davis also submitted a preliminary plat for "Section Two of Kaye's Subdivision," which the Planning Board preliminarily approved on 12 January 1998. Plaintiffs admit attending the County Commissioners' hearings and assert they "repeatedly requested and were denied enforcement of the [Manufactured Home Park Ordinance]." Plaintiffs did not appeal the decisions of the Planning Board or the County Commissioners' approval of any of defendants' subdivision plats.

Beginning in April 1998, defendants rented several of the lots in Section One of Kaye's Subdivision to tenants, who placed tenant-owned manufactured homes on the subdivided lots. In November 1998, Davis resubmitted a plat of Section One of Kaye's Subdivision for preliminary and final approval because the prior approved plat had not been recorded within six months after approval. He also submitted Section Two of Kaye's Subdivision for final approval. Both subdivisions received final approval as a homeowners' association subdivision.

By the end of 1999, approximately twelve to fourteen of the subdivision lots in Kaye's Subdivision had been rented to third persons. At all times, Surry County had a Subdivision Ordinance and a Manufactured Home and Manufactured Home Park Ordinance in effect. The parties stipulated that all hearings and meetings regarding Kaye's Subdivision were properly scheduled and that all votes were properly taken and recorded by the Planning Board and County Commissioners. At the time all plats were approved, the County Commissioners had not adopted a zoning ordinance to restrict uses on defendants' property.

In addition to these facts stipulated to among the parties, the trial court found that defendants properly obtained approval from Surry County for the subdivision of the land in question. Further, the approved maps of this subdivision were properly recorded with the Surry County Register of Deeds.

On 4 June 2002, this Court reversed the trial court's order awarding summary judgment to plaintiffs in an unpublished opinion. The case was remanded to the trial court for further proceedings. This matter came on for trial in January 2003. The trial court entered summary judgment in favor of defendants based on stipulated facts, affidavits, depositions, and additional arguments. Plaintiffs appeal.

## II. Issues

The issues on appeal are whether the trial court erred in: (1) concluding that the definition of a subdivision as the division of land "for the purpose of sale or building development" includes the rental of spaces to third parties for placement of their mobile homes and (2) concluding that the Subdivision Ordinance does not regulate use of land and that the project was properly subdivided.

## III. Definition of "Subdivision"

[1] Plaintiffs contend the trial court erred in concluding " 'for the purpose of sale or building development' includes the construction or placing of improvements on lots in the subdivision, so that the lots can be leased to third parties." Plaintiffs argue the definition of a "subdivision," as used in the ordinance does not allow the rental of lots to third parties, who later place their owned mobile homes thereon. We disagree.

"A county may by ordinance regulate the subdivision of land within its territorial jurisdiction." N.C. Gen. Stat. § 153A-330 (2003). Plaintiffs' assignment of error regarding the interpretation of the Subdivision Ordinance is a question of law, requiring this Court to apply *de novo* review of the trial court's judgment. *Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 137, 431 S.E.2d 183, 187 (1993).

Here, the Subdivision Ordinance defines a subdivision as "all divisions of a tract or parcel of land into two or more lots, building sites, or other divisions for the purpose of sale or building development (whether immediate or future) . . . ." The definition lists four exclusions, which the parties do not argue apply to the case at bar. Plaintiffs argue the Subdivision Ordinance does not allow for the rental of spaces to tenants for placement of their mobile homes and the project was not properly subdivided.

"In interpreting a[n] . . . ordinance, 'the basic rule is to ascertain and effectuate the intent of the legislative body.' " *Id.* at 138, 431 S.E.2d at 187 (quoting *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980)). In determining the intent of the legislative body, we must examine the language, spirit, and goal of the ordinance. *Capricorn Equity Corp.*, 334 N.C. at 138, 431 S.E.2d at 188. Further, "some deference is given to the [Board of Commissioners'] interpretation of its own [ordinance]." *Tucker v. Mecklenburg Cty. Zoning Bd. of Adjust.*, 148 N.C. App. 52, 57, 557

S.E.2d 631, 635 (2001), *aff'd in part and rev. improvidently allowed in part*, 356 N.C. 658, 576 S.E.2d 324 (2003).

During oral argument, the parties stipulated that the homes placed on the lots were proper and allowed, and plaintiffs do not contest that the tenants who rented defendants' lots had complied with all applicable Surry County ordinances and permitting requirements for the homes. Plaintiffs also conceded that defendants or their tenants could have constructed site-built homes or moved modular or factory built homes onto the lots. At the time this action arose, Surry County had not adopted a zoning ordinance regulating the use of defendants' land. *See Orange County v. Heath*, 278 N.C. 688, 691, 180 S.E.2d 810, 812 (1971) ("A zoning ordinance is a legislative determination as to what restrictions should be placed on the use of land.").

The phrase "for the purpose of sale or building development," whether immediate or future, is not defined within the Subdivision Ordinance. In Article IV, the Subdivision Ordinance clearly states its purpose and intent to "establish procedures and standards for the development and subdivision of land within Surry County," insure accurate legal identification, promote orderly layout of the land, provide suitable building sites, avoid overcrowding of the land, and protect the health, safety, and welfare of Surry County residents. Nothing in the Subdivision Ordinance addresses or limits the type of buildings or structures that may be placed on the subdivided land. The Subdivision Ordinance also allows subdivisions to be held in single ownership as a "Homeowners' Association Subdivision." Kaye's Subdivision was approved by the County Commissioners as a homeowners' association subdivision.

[2] In contrast, the Manufactured Home Park Ordinance does not conflict with the trial court's ruling, because a "manufactured home park," by its express terms, applies only to a "tract of unsubdivided land." Here, Defendants' land was approved to be *subdivided*. After the maps were recorded, Surry County issued individual *ad valorem* property tax bills for each lot. The Manufactured Home Park Ordinance states that "this ordinance is not intended to interfere with, abrogate, or annul . . . ordinances of [Surry] County." Further, the Planning Board was aware of the project's potential development and use.

The County Commissioners were also aware that Davis intended to rent the subdivided lots to tenants for placement of their mobile homes on the property. Plaintiffs requested the County Commission-

ers to enforce the Manufactured Home Park Ordinance, but they refused to take any enforcement action. The Planning Board and County Commissioners did not condition their approval of the sub-division plats for defendants' property and did not at any time require defendants to obtain manufactured home permits for any of the sub-divided lots.

"When zoning restrictions are met, and subdivision regulations as set out in the ordinance are complied with, permits must be issued." *Nazziola v. Landcraft Props., Inc.*, 143 N.C. App. 564, 566, 545 S.E.2d 801, 803 (2001) (citing *Quandrant Corp. v. City of Kinston*, 22 N.C. App. 31, 205 S.E.2d 324 (1974)). The Subdivision Ordinance, Section 31 states, "[n]o real property within the jurisdiction of this Ordinance shall be subdivided . . . until a preliminary and a final plat have been reviewed and approved as provided hereinafter." Article VI of the Subdivision Ordinance, Sections 60 through 65, requires the owner to submit a sketch plan, gain approval of a preliminary plat by the Planning Board, obtain approval of the final plat by the Planning Board and County Commissioners, and record the final plat with the Surry County Register of Deeds. The parties stipulated that defend-ants complied with all of these conditions.

The preliminary site plans for Kaye's Subdivision received rec-ommended approval by the Planning Board, and the County Commissioners gave its final approval as a homeowners' association subdivision. The plats were properly recorded with the Surry County Register of Deeds. The Subdivision Ordinance states, "[t]he Register of Deeds shall not file or record a plat of a subdivision of land located within the territorial jurisdiction of Surry County that has not been approved in accordance with these provisions . . . ." Plaintiffs do not contest the trial court's conclusion that the approved maps of the sub-division were properly recorded. These uncontroverted facts show that defendants complied with the procedures set forth in the Subdivision Ordinance. The Planning Board and County Commissioners approved the subdivision of defendants' land through proper procedures. The Manufactured Home Park Ordinance expressly applies only to *unsubdivided* land.

The dissenting opinion concludes that the placing of mobile homes on the land does not constitute "for the purpose of sale or building development" under the Subdivision Ordinance. This Court, however, has recognized that a mobile home park can meet the defi-nition of a subdivision. *State v. Turner*, 117 N.C. App. 457, 459, 451 S.E.2d 20 (1994). Although *Turner* is a criminal case, we adopted the

definition of a "subdivision" used in Black's Law Dictionary, 5th ed. (1979) as, "[d]ivision into smaller parts of the same thing or subject-matter. The division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land *for sale or development.*" *Id.* (emphasis supplied). This definition is virtually identical to the definition used in the Subdivision Ordinance at bar. In *Turner*, we stated, "[t]he evidence shows that Timberline Mobile Home Park is owned by one individual, who has divided the property into lots for lease. The mobile home park thus fits within the foregoing definition of a subdivision." *Id.*

We hold that the stipulated facts and the approval of Kaye's Subdivision by the County Commissioners support the trial court's conclusion that "for the purpose of sale or building development" includes construction on subdivision lots, which are leased to third parties who place their own improvements on the property. Further, nothing in the Subdivision Ordinance prevents the owner from leasing a lot in the subdivision. This assignment of error is overruled.

## IV. Subdivision Ordinance

[3] Plaintiffs contend the trial court erred in concluding that the Subdivision Ordinance does not regulate use of land. Plaintiffs argue both the Subdivision Ordinance and the Manufactured Home Park Ordinance regulate use, and therefore, the Manufactured Home Park Ordinance is the more restrictive and governs the operation of the project. We disagree.

In support of their argument, plaintiffs included in their brief copies of this Court's unpublished opinion and the trial court's order in the case of *Murphy v. McKnight.* Neither our unpublished opinion nor the trial court's order in the *Murphy* case are precedent in this case, and these documents were not part of the record on appeal. We will not consider any argument based on these documents and grant defendants' motion to strike these portions of plaintiffs' brief. *See Horton v. New South Ins.*, 122 N.C. App. 265, 268, 468 S.E.2d 856, 858, *cert. denied*, 343 N.C. 511, 472 S.E.2d 8 (1996); *see also* N.C.R. App. P. 30(e)(3) (2004).

" 'Every person owning property has the right to make any lawful use of it he sees fit, and restrictions sought to be imposed on that right must be carefully examined . . . .' " *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 401, 584 S.E.2d 731, 736, *reh'g denied*, 357 N.C. 582, 588 S.E.2d 811 (2003) (quoting *Vance S. Harrington & Co.*

*v. Renner*, 236 N.C. 321, 324, 72 S.E.2d 838, 840 (1952)). The general requirements stated within the Subdivision Ordinance provide, "[a]ll subdivisions and lots created under this Ordinance must comply with all applicable local and state laws, including any zoning ordinance which may apply to the area to be subdivided." Use of these words shows the intent to distinguish between the Subdivision Ordinance and zoning ordinances, which regulate land use, and supports the trial court's conclusion. Further, the County Manager's deposition shows that Surry County has not yet determined "what [constitutes] a valid activity [within] a legal subdivision." He also testified that "the subdivision ordinance does not restrict the activity that occurs there." Because the Subdivision Ordinance does not regulate land use, plaintiffs' assignment of error is overruled.

## V.  Conclusion

The parties stipulated to the majority of the facts at bar. Based on those stipulations and the clear and unambiguous language of the ordinances, the trial court did not err in concluding that the definition of "for the purpose of sale or building development" in the Subdivision Ordinance includes the rental of subdivided lots to third parties for placement of tenants' mobile homes thereon. The trial court properly concluded that the Subdivision Ordinance does not regulate land use on defendants' property. The trial court's judgment is affirmed.

Affirmed.

Judge McGEE concurs.

Judge WYNN dissents.

WYNN, Judge dissenting.

The Surry County Subdivision Ordinance defines subdivision as "all divisions of a tract or parcel of land into two or more lots, building sites, or other divisions for the purpose of sale or building development (whether immediate or future)." As I believe Defendants' rental or lease of lots to third parties for the placement of mobile or manufactured homes does not constitute a sale of a lot or building development, I dissent.

The terms 'sale' and 'building development' are not defined in the ordinance. "As neither term is defined by [Surry County's Subdivi-

sion] Ordinance, [what constitutes a sale or building development] must be based upon each terms' normal meaning." *See Appalachian Outdoor Advertising Co. v. Boone Board of Adjustment,* 128 N.C. App. 137, 493 S.E.2d 789 (1997).

According to Black's Law Dictionary the term 'sale' constitutes "a contract between two parties, called, respectively, the seller (or vendor) and the buyer (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and possession of property." In this case, the record indicates Defendants advertised the lots for rent to mobile home owners and rented spaces to 12 to 14 mobile home owners. Defendants also admit they never placed a price on any of the lots, never advertised or offered any of the lots for sale, and never agreed to sell any of the lots to anyone. As the lots were rented or leased to the mobile home owners, a transfer of title did not occur. Although Defendant, Yvonne Allred, testified the lessees had an option to buy the lots, she admitted the lease did not contain a provision to that effect and there were no other writings indicating the lessees had such an option. Moreover, the lessees were not provided with any information as to when they could exercise the option or the lot prices. Thus, at the time of the lawsuit, the land was not for sale.

Moreover, the rent or leasing of the lots to third parties for the placement of mobile or manufactured homes does not constitute building development. According to American Heritage Dictionary, Third Edition, 'develop' means "to cause a (tract of land) to serve a particular purpose and 'development' means "the act of developing; the state of being developed; a significant event, or occurrence, or change, or a group of dwellings built by the same contractor." By statute, a manufactured home is "a structure, transportable in one or more sections, which, in the traveling mode, is eight feet or more in width or is 40 feet or more in length, or when erected on site, is 320 or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning and electrical systems contained therein." N.C. Gen. Stat. § 143-143.9(6). Based upon this definition, a manufactured home is assembled in components at a factory and hooked together upon delivery to the mobile home site, which does not constitute a building development on a tract of land.

Defendants merely rented the lots and did not have any involvement with the placement of trailers onto the lots. Relying upon a

criminal case, *State v. Turner*, 117 N.C. App. 457, 451 S.E.2d 19 (1994), the majority concludes lot rentals for mobile homes constitute the sale of land or building development. Unlike the present case where this Court has to construe the meaning of a zoning ordinance and N.C. Gen. Stat. § 153A-335, which provides the statutory definition of subdivision, the issue in *State v. Turner* concerned whether a road in a mobile home park was a public vehicular area within the meaning of N.C. Gen. Stat. § 20-4.01(32). In *Turner*, the defendant was arrested for drunk driving in an area that the facts concede to have been "a privately-owned mobile home park". *Turner*, 117 N.C. App. at 458, 451 S.E.2d at 19. The issue in that case was not whether the county had properly zoned the area as a mobile home park; rather, the issue was whether the defendant was driving on a highway, street or public vehicular area within the meaning of N.C. Gen. Stat. § 20-4.01(32). In reaching the conclusion that a jury could find the street was a public vehicular area within the meaning of N.C. Gen. Stat. § 20-4.01(32), this Court held a mobile home park fits within the definition of a subdivision. Thus, in *Turner*, this Court did not (1) address the present issue, (2) determine whether mobile home lot rentals constituted a sale within the meaning of the Surry County zoning ordinance or N.C. Gen. Stat. § 153A-335, nor (3) determine whether the placement of mobile homes onto a lot constituted building development. Thus, I believe *State v. Turner* does not control the disposition of the legal issues presented by this civil case.

All of the testimony indicates Defendants were developing the lots for trailer hookups and not the construction of dwellings or buildings. Defendants initially sought planning board approval for a mobile home park and, after changing their plans, they sought approval for a subdivision in an attempt to circumvent the requirements of the Surry County Manufactured Home and Manufactured Home Park Ordinance which imposes minimum development standards for a manufactured home park. Indeed, Defendants testified that they did not want to incur the expense of planting the tree screen and wanted to avoid road maintenance expenses. With a subdivision, Defendants did not have to plant a buffer zone (tree screen) and road maintenance could be turned over to the State or a Homeowner's Association. The Defendants' circumvention of the Manufactured Home Park Ordinance should not be sanctioned by this Court. Moreover, as I believe Defendants' lot rentals do not comport with the Surry County Subdivision Ordinance definition of subdivision, I hereby dissent.