RICHARD H. ROBERTSON AND BARBARA G. ROBERTSON, PETITIONERS v. ZONING
BOARD OF ADJUSTMENT FOR THE CITY OF CHARLOTTE, RESPONDENT

No. COA04-166

(Filed 21 December 2004)

**1. Zoning— variance denied—whole record considered—decision not arbitrary**

The trial court properly considered the whole record when reviewing a board of adjustment's denial of a variance, and the conclusion that the board's decision was based on competent, material, and substantial evidence is not arbitrary and capricious.

**2. Zoning— variance—fence violating set-back—undue hardship**

The trial court properly determined that a board of adjustment's decision to deny a variance for a fence violating a set-back was supported by the whole record and was not arbitrary where the board considered exhibits and testimony about safety issues, made findings regarding the portion of the variance that was granted and denied, and concluded that petitioners' alleged undue hardship was personal.

Appeal by petitioners from judgment entered 5 December 2003 by Judge Yvonne Mims Evans in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 October 2004.

*Bledsoe & Bledsoe, P.L.L.C., by Louis A. Bledsoe, Jr., for petitioners-appellants.*

*Office of the Charlotte City Attorney, by Assistant City Attorney Terrie V. Hagler-Gray, for respondent-appellee.*

TYSON, Judge.

Richard H. Robertson and Barbara G. Robertson (collectively, "petitioners") appeal from a judgment and order entered affirming the decision of the Charlotte Zoning Board of Adjustment ("the Board") denying petitioners' application for a variance. We affirm.

I.  Background

Petitioners own property located at 7113 Signer Road in Charlotte, North Carolina. In February and March 2002, petitioners

constructed a fence near Signer Road, in front of their home. The fence extends through the required twenty-foot setback and continues through the petitioners' side yard to the rear of their property. The fence also runs along the property line of petitioners' neighbor, Bratton Epps ("Epps").

According to petitioners' survey, the fence begins near Signer Road at a height of four and one-half (4.5) feet above grade and rises to eight feet above grade at the twenty-foot front setback line. The height remains at eight feet above grade for the entire remaining length of the fence. The fence breaks beyond the required setback to allow for a sixteen-foot driveway that cuts across Epps's property to access petitioners' residence.

On 24 May 2002, petitioners submitted a letter to the Mecklenburg County Engineering and Building Standards Department complaining of zoning violations by their neighbor, Epps. Mecklenburg County Zoning Inspector Donald Moore ("Inspector Moore") responded to petitioners' complaint. When Inspector Moore visited Epps's property, he noticed that petitioners' fence violated Section 12.406(1) of the Charlotte Zoning Ordinance ("the Ordinance"). The Ordinance provides: "Any fence or wall located in the required setback shall not be built to a height greater than 5 feet above grade, unless it is part of a zero lot line subdivision, then it maybe [sic] 6 feet in height."

On 15 July 2002, petitioners received a notice of violation regarding their fence. The notice instructed petitioners to reduce the height of their fence from eight feet to five feet. On 14 August 2002, petitioners filed an application for a three-foot variance from Section 12.406(1) in order to allow their existing fence to remain. After a hearing on 24 September 2002, the Board: (1) granted petitioners a three-foot variance for the portion of the fence located from the opening of the driveway to the end of the fence; and (2) denied a three-foot variance for the portion of the fence from Signer Road to the driveway opening.

Petitioners appealed the Board's decision to the Mecklenburg County Superior Court. The trial court concluded the Board failed to make "sufficiently detailed and clear findings of fact from which [the trial court] can determine whether the decision should be affirmed or reversed" and remanded the case to the Board. The Board "considered the whole record [of] the September 24, 2002 Board hearing . . . ," made additional findings of fact, and upheld its earlier decision to deny petitioners' request for a variance.

Petitioners again appealed the Board's decision to the Superior Court. The trial court affirmed the Board's decision. Petitioners appeal.

## II. Issues

The issues on appeal are whether: (1) the trial court applied the proper standard of review; and (2) the Board's decision was arbitrary and capricious and unsupported by competent, material, and substantial evidence in the whole record.

## III. Standard of Review

"On review of a superior court order regarding a board's decision, this Court examines the trial court's order for errors of law by determining whether the superior court: (1) exercised the proper scope of review, and (2) correctly applied this scope of review." *Tucker v. Mecklenburg County Zoning Bd. of Adjustment*, 148 N.C. App. 52, 55, 557 S.E.2d, 631, 634 (citing *In re Appeal of Willis*, 129 N.C. App. 499, 501, 500 S.E.2d 723, 725 (1998)), *disc. rev. granted*, 355 N.C. 758, 566 S.E.2d 483 (2002), *aff'd in part*, 356 N.C. 658, 576 S.E.2d 324 (2003).

## IV. Trial Court's Review

Petitioners argued before the trial court that the Board's decision was arbitrary and capricious, not supported by the record, and contained errors of law.

> The proper standard of review for the superior court depends on the particular nature of the issues presented on appeal. When the petitioner correctly contends that the agency's decision was either unsupported by the evidence or arbitrary and capricious, the appropriate standard of review for the initial reviewing court is "whole record" review. If, however, petitioner properly alleges that the agency's decision was based on error of law, *de novo* review is required.

*Tucker*, 148 N.C. App. at 55, 557 S.E.2d at 634 (internal citations omitted). "The 'whole record' test requires the reviewing court to examine all competent evidence (the "whole record") to determine whether the Board's decision is supported by substantial evidence." *Id.* (quotation omitted).

On 8 April 2003, the trial court remanded this matter to the Board with instructions to make further findings of fact regarding the "denied variance portion of the Board's decision. . . . " On remand, the

Board made additional findings of fact and upheld its decision to deny petitioners' request for a variance. On 4 December 2003, the trial court determined that the Board's "additional findings of fact are supported by the evidence in the record;" the Board's decision is "supported by competent, material, and substantial evidence in the whole record" and is not arbitrary and capricious; and petitioners' "rights were protected, including the right to offer evidence, cross-examine witnesses, and inspect documents."

## V.  The Whole Record Test

Our review is whether the trial court, in applying the "whole record test," properly determined that the Board made sufficient findings of fact which were supported by the evidence in an effort to prevent decisions from being arbitrary and capricious. *Crist v. City of Jacksonville*, 131 N.C. App. 404, 405, 507 S.E.2d 899, 900 (1998) (citing *Shoney's v. Bd. of Adjustment for City of Asheville*, 119 N.C. App. 420, 421, 458 S.E.2d 510, 511 (1995)).

### A.  Arbitrary and Capricious

[1] The trial court's decision may be reversed as arbitrary and capricious if petitioners establish that the Board's decision was "whimsical, made patently in bad faith, indicate[d] a lack of fair and careful consideration, or ' "fail[s] to indicate 'any course of reasoning and the exercise of judgment. . . .' " ' " *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468-69, 513 S.E.2d 70, 73 (1999) (quoting *Adams v. N.C. State Bd. of Registration for Professional Engineers and Land Surveyors*, 129 N.C. App. 292, 297, 501 S.E.2d 660, 663, (1998) (citation omitted)). Petitioners bear the burden of proving their case and must show what type of variance they need and why the variance is needed. *Craver v. Board of Adjustment*, 267 N.C. 40, 43, 147 S.E.2d 599, 601 (1966). Relying on *Refining Co. v. Board of Aldermen*, 284 N.C. 458, 202 S.E.2d 129 (1974), petitioners contend that the Board's conclusions are speculative, unsupported by any factual data or background, and incompetent and insufficient to support a finding that public safety would be adversely affected. Petitioners argue: (1) the Board did not follow the trial court's instruction on remand; (2) the Board made determinations unsupported by additional findings of fact; and (3) the Board's findings are not supported by law or evidence.

Petitioners argue that the Board did not address the trial court's concerns on remand as required by the order dated 8 April 2003.

Petitioners assert the record lacks any evidence to indicate where the fence is located, how traffic may be hindered because of the fence, and how a safety issue arises because of the fence. Petitioners also assert that the Board cannot deny their variance request simply because it "would adversely affect the public interest." *Triple E Associates v. Town of Matthews*, 105 N.C. App. 354, 361, 413 S.E.2d 305, 309 (*citing In re Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970)), *disc. rev. denied*, 332 N.C. 150, 419 S.E.2d 578 (1992).

On remand, the Board made additional findings of fact to support its denial of petitioners' variance request. These additional findings of fact were: (1) petitioners created their own hardship by not applying for a variance before building a fence outside the Ordinance requirements; (2) petitioners' hardship is "personal in nature" in that petitioners built this fence because of an argument with their neighbors; (3) petitioners' eight-foot fence would require a three-foot or sixty-percent variance in the front setback and a two-foot or thirty-three-percent variance in the side yard; (4) petitioners' property slopes more steeply the closer it gets to the lake, and the slope nearest to Signer Road is not proportionate to and does not justify petitioners' large variance request; (5) the portion of the fence in the front setback and side yard has more of an impact on adjoining property owners than the portion of the fence in the rear yard; and (6) the fence height in the setback is close to the severe curve on Signer Road and ·creates safety concerns. The Board found that if it granted petitioners' variance request, it would "not promote the public safety and welfare of individuals traveling Signer Road."

Sufficient evidence in the record supports the Board's findings of fact. Petitioner Richard Robertson and other witnesses testified regarding the location of the fence.

COUNSEL:      . . . the fence that you built, did it start on the—all the way over to the margin of the setback line?

ROBERTSON:    No. . . . it's about four feet back from the corner of our property from the margin of the right-of-way. In other words, we . . . set it back about four feet. And then the fence was about five feet high . . . the fence from that point runs for about sixteen feet horizontally with the property lines . . . And so if it is five feet at the very beginning, when it gets back to the next sixteen feet to the twenty-foot setback . . . , then the

fence is violating slightly for the whole—practically the whole sixteen feet.

COUNSEL: In other words, you're saying it's above five feet for that period and then it slopes up until it gets to eight feet?

ROBERTSON: Right. And it gets to eight feet, I believe the engineering report will indicate, about two feet before it gets to the twenty-foot setback.

In addition to an engineering report submitted, the physical survey of petitioners' property shows the measurements and locations where the fence violated the ordinance. Thomas Mussoni, a Board member, summarized that "it is a sixty percent variance from the—within the front setback . . . [a]nd as far as the side yard goes, we looked at it as being a thirty-three percent variance . . . ." Additional findings of fact regarding the "steepness of the slope" and the elevation drop in petitioners' back yard are supported by the evidence.

On remand from the trial court, the Board recognized that the neighbors brought the traffic visibility problem to the Board's attention.

CITY ATTORNEY: I guess the judge . . . was saying it looked as if y'all were relying solely on the testimony of those witnesses, Foster and Brown and I think also Mr. Epps . . . as to the safety concerns, in making a determination that there was a safety concern.

BOARD MEMBER: Well, they brought it to our attention and then we evaluated the registered survey of the property that illustrates the drive curving around the end of the fence, so that the sight distance across the end of the fence was fairly short and restricted.

CITY ATTORNEY: So you—so, in addition to the testimony of the witnesses you are looking at what?

BOARD MEMBER: A survey of the property.

CITY ATTORNEY: . . . if you look at the physical survey . . . you interpret [the survey] to show the existence of some sight—

BOARD MEMBER: A severe curve around the corner at the end of the fence that inhibits being able to see oncoming traffic.

The trial court's conclusion that the Board made a decision based on "competent, material, and substantial evidence in the whole record" is supported by the Board's findings of fact and is not arbitrary and capricious. We conclude the reviewing court properly considered the whole record.

### B. Errors of Law

[2] In the trial court, petitioners challenged the Board's conclusions on safety and argued their due process rights were violated. The trial court reviewed the evidence and found, "the record of the proceedings before the [Board did] not reveal errors of law." According to the Ordinance, variances are only granted to those applicants whose "difficulty of hardship is peculiar to the property in question and is not generally shared by other properties in the same neighborhood and/or used for the same purposes." The trial court determined that the Board's decision was not arbitrary or capricious, and that its findings of fact were supported by the evidence in the record. The trial court concluded, "The appropriate due process rights of the petitioners were protected, including the right to offer evidence, cross-examine witnesses, and inspect documents." Petitioners had "ample opportunity to cross-examine adverse witnesses and to offer evidence in [their] behalf." *Burton v. Zoning Board of Adjustment*, 49 N.C. App. 439, 443, 271 S.E.2d 550, 552 (1980), *cert. denied*, 302 N.C. 217, 276 S.E.2d 914 (1981).

Petitioners assert that the Board determined the fence was a safety issue without any evidence to support its decision. We have already held the trial court did not err in concluding the Board's decision regarding safety concerns was supported by the whole record. The record indicates that, on remand, the Board considered the exhibits and witnesses' testimony. It made sufficient additional findings of fact to support the record regarding what portion of the variance was granted or denied.

On remand from the trial court, the Board discussed the sixty-percent variance within the front setback and the thirty-three-percent variance for the side yard sought by petitioners as being "large in scale for the protection that it offered, the increase in protection and privacy that it offered was not proportional to the—to the variance

requested." Petitioners argue undue hardship to their property because the variance petition was denied. The Board considered the evidence received at the hearing and summarized:

> The topography is illustrated in the photographs that were exhibits at the time that have children standing next to it and it gives you a very clear idea of what the topography was like and it is apparent the fence is sloping fairly severely down in the ground and then back up to follow the topography.

The Board concluded that the petitioners' alleged undue hardship was personal in nature and a nuisance issue.

The Board's authority to grant a variance arises only when its decision is within the meaning and intent of the zoning ordinance. The Board is prohibited from authorizing a structure that conflicts with the general purpose of the ordinance, "for to do so would be an amendment of the law and not a variance of its regulations." *Lee v. Board of Adjustment*, 226 N.C. 107, 112, 37 S.E.2d 128, 132 (1946). "The requested variance [by petitioners] would be directly contrary to the zoning ordinance . . . and in the absence of evidence to support the petition, the Board had no authority to grant petitioners request." *Donnelly v. Bd. of Adjustment of the Village of Pinehurst*, 99 N.C. App. 702, 708, 394 S.E.2d 246, 250 (1990) (citing *Sherrill v. Town of Wrightsville Beach*, 76 N.C. App. 646, 648, 334 S.E.2d 103, 104 (1985)).

Relying on *Williams v. N.C. Dep't of Env't & Natural Res.*, 144 N.C. App. 479, 548 S.E.2d 793 (2001), petitioners contend the Board improperly determined whether an unnecessary hardship existed, and argue this factor was irrelevant and not supported by the law. Petitioners misinterpret the law in *Williams*. This Court did not hold that "unnecessary hardship" was an irrelevant factor when determining whether to grant or deny a variance. Rather, in *Williams*, this Court held that "to determine whether a parcel of property suffers from unnecessary hardship due to strict application of CAMA, the CRC must make findings of fact and conclusions of law as to the impact of the act on the landowner's ability to make reasonable use of his property." *Id.* at 487, 548 S.E.2d at 798. The trial court properly determined that the Board's decision was supported by the whole record and its decision was not arbitrary and capricious. This assignment of error is overruled.

HOLROYD v. MONTGOMERY CTY.

[167 N.C. App. 539 (2004)]

VI.  Conclusion

The trial court properly reviewed the whole record and sufficiently concluded the Board's decision was free of errors of law. The trial court correctly found the Board's decision was based on competent, material, and substantial evidence and that the Board's findings were not arbitrary and capricious. The trial court's order is affirmed.

Affirmed.

Judges BRYANT and STEELMAN concur.