G. WILLIAM DOBO AND WIFE, BARBARA B. DOBO, PETITIONERS v. ZONING BOARD OF
ADJUSTMENT OF THE CITY OF WILMINGTON AND CITY OF WILMINGTON,
RESPONDENTS

No. COA01-249

(Filed 16 April 2002)

**1. Zoning— constitutional challenge—board of adjustment's
authority to rule**

A board of adjustment did not have the authority to rule on
petitioner's constitutional challenges to the validity of a zoning
ordinance in an appeal pursuant to N.C.G.S. § 160A-388(e). A
board of adjustment sits in a quasi-judicial capacity and has only
the authority granted by statute; in this case, the board had only
the authority to reverse, affirm, or modify the enforcement offi-
cer's determination that a sawmill next to a recent, exclusive sub-
division violated the ordinance. Moreover, the superior court had
the statutory power to review only the issue of whether the deter-
mination was properly affirmed. Constitutional challenges to the
validity of the ordinance may be appropriately adjudicated by
means of a separate civil action instituted in superior court.

**2. Zoning— sawmill—noncommercial use—residential area**

There was competent, material, and substantial evidence in
the record to support a zoning board's conclusion that, under the

---

7. Accordingly, I do not address the proper application of section 1D-25(b) as the
majority does in section II of its opinion.

particular circumstances of the case, petitioners' sawmill in a residential area violated a zoning ordinance because it was not of a nature that is customarily incidental and subordinate to the primary residential use of the property, even though petitioners used the sawmill for noncommercial and nonindustrial purposes.

**3. Zoning— board of adjustment hearing—incompetent evidence**

Petitioners were not deprived of a fair hearing concerning a zoning violation where there was competent, material and substantial evidence in the record to support the board of adjustment's decision. Mere presence of incompetent evidence during a hearing does not, without more, entitle an appellant to a reversal of the board's decision.

**4. Appeal and Error— preservation of issues—assignment of error—not raised below**

An assignment of error was not addressed where it concerned the authority of a board of adjustment and an enforcement officer to make findings and conclusions regarding the N.C. Building Code, but petitioners did not direct the attention of the Court of Appeals to any specific place in the record indicating that the issue was previously raised and addressed before the board or the superior court.

Judge TYSON concurring in part and dissenting in part.

Appeal by petitioners from an order entered 5 October 2000 by Judge Stafford G. Bullock in New Hanover County Superior Court. Heard in the Court of Appeals 29 January 2002.

*Kenneth A. Shanklin and Matthew A. Nichols, for petitioner-appellants.*

*City Attorney Thomas C. Pollard and Assistant City Attorney Dolores M. Williams, for respondent-appellees.*

HUNTER, Judge.

G. William Dobo ("Dobo") and Barbara B. Dobo (together "petitioners") appeal the superior court's order affirming a decision of the Board of Adjustment of the City of Wilmington ("the Board") that Dobo's use of a sawmill constituted a violation of the City of Wilmington's Zoning Ordinance. We affirm.

The evidence presented at the hearing tended to establish the following facts. Dobo resides in Wilmington, North Carolina. On 23 September 1996, Dobo purchased a "super hydraulic sawmill" manufactured by "Wood-Mizer Products, Inc." ("the sawmill"). The forty-horsepower sawmill is powered by a five-gallon diesel engine, and is over twenty-four feet long, six feet wide, and seven feet high. Dobo used the sawmill on his residential property to saw trees and he used the lumber that he produced for various purposes, including: for the construction of a "hobby shop" in his backyard (for which he obtained a building permit); for woodworking; for the construction of other structures such as a walkway; for building furniture; and to give away to friends and neighbors for free. Dobo did not sell the lumber that he produced on his property using the sawmill.

On 1 March 1999, the City of Wilmington ("the City") annexed Dobo's property, which then became subject to the City of Wilmington's Zoning Ordinance ("the Zoning Ordinance"). At some time thereafter, Code Enforcement Officer Richard A. Cliette inspected petitioners' property on several occasions. Officer Cliette did not cite petitioners for violating the City's Noise Ordinance. However, on 10 January 2000, Officer Cliette sent a "Notice of Zoning Violation" to petitioners, advising them that Dobo's use of the sawmill violated Section 19-6, Article II of the Zoning Ordinance.

Section 19-38 of the Zoning Ordinance permits "accessory uses" in all residential zoning districts. Section 19-6 of the Zoning Ordinance defines the term "accessory use":

> Accessory use or structure: A use or structure on the same lot with, and of a nature customarily incidental and subordinate to, the principal use or structure (i.e. pump house, home occupation, tool shed, detached garage, storage shed, garage apartment, and other uses as determined by the Code Enforcement Officer).

Petitioners appealed Officer Cliette's determination to the Board. Following a hearing conducted before the Board, the Board entered an order upholding Officer Cliette's determination that Dobo's use of the sawmill violated the Zoning Ordinance.

On 20 July 2000, petitioners filed a petition in the Superior Court of New Hanover County seeking judicial review of the Board's decision. On 5 October 2000, the superior court entered an order affirming the Board's decision to uphold the determination that Dobo's use

of the sawmill violated the Zoning Ordinance. Petitioners appeal to this Court.

Petitioners' initial appeal of Officer Cliette's determination to the Board was taken pursuant to subdivision (b) of N.C. Gen. Stat. § 160A-388 (1999), which provides in pertinent part:

> The board of adjustment shall hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to this Part. An appeal may be taken by any person aggrieved or by an officer, department, board, or bureau of the city. . . . The board of adjustment may reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from, and shall make any order, requirement, decision, or determination that in its opinion ought to be made in the premises.

N.C. Gen. Stat. § 160A-388(b). Petitioners then appealed the Board's determination to the superior court pursuant to subdivision (e) of that same statute, which provides that: "Every decision of the board shall be subject to review by the superior court by proceedings in the nature of certiorari." N.C. Gen. Stat. § 160A-388(e).

Where an appeal is taken pursuant to N.C. Gen. Stat. § 160A-388(e), the superior court "sits in the posture of an appellate court." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). The superior court "is not the trier of fact" and, therefore, "does not review the sufficiency of [the] evidence presented to it," but rather "reviews that evidence presented to the town board." *Id.* at 626-27, 265 S.E.2d at 383. The scope of review of the superior court in reviewing a town board's decision, and the scope of review of this Court on appeal from the superior court, includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383; *Fantasy World, Inc. v. Greensboro Bd. of Adjustment,* 128 N.C. App. 703, 706-07, 496 S.E.2d 825, 827, *appeal dismissed and disc. review denied,* 348 N.C. 496, 510 S.E.2d 382 (1998).

On appeal, petitioners present a number of arguments for our review. We have condensed these arguments into the following two questions: (1) whether the superior court erred in concluding as a matter of law that petitioners were not entitled to raise constitutional objections to the Zoning Ordinance in an appeal taken pursuant to N.C. Gen. Stat. § 160A-388(e); and (2) whether the superior court erred in affirming the Board's decision that Dobo's use of the sawmill constituted a violation of the Zoning Ordinance.

I.

At all times related to the present legal proceeding, petitioners have made clear that they maintain certain objections to the validity of Section 19-6 of the Zoning Ordinance on at least two separate constitutional grounds. First, petitioners have contended that Section 19-6 of the Zoning Ordinance is unconstitutionally vague. *See, e.g., State v. Elam,* 302 N.C. 157, 161-62, 273 S.E.2d 661, 664-65 (1981) (a statute or regulation is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly). Second, petitioners contend that Section 19-6 of the Zoning Ordinance is an unconstitutional delegation of legislative authority. *See, e.g., Jackson v. Board of Adjustment,* 275 N.C. 155, 164-65, 166 S.E.2d 78, 84-85 (1969) (the legislature may only confer upon a subordinate agency the authority or discretion to execute a law if adequate guiding standards are laid down).

The record indicates that petitioners' position on these constitutional issues was made known at the hearing before the Board, but that the Board did not directly address or rule upon these issues. In their petition for *writ of certiorari* to superior court, petitioners again set forth their constitutional arguments. However, the superior court declined to address any constitutional issues because it concluded that "[a] Petition for *Writ of Certiorari* is not the proper

proceeding to determine constitutional issues involving a municipal zoning ordinance." Petitioners contend on appeal to this Court that the superior court erred in this legal determination, and that they are entitled to challenge the constitutionality of the Zoning Ordinance in this proceeding. We disagree.

[1] In reviewing the determination of an administrative enforcement officer pursuant to N.C. Gen. Stat. § 160A-388, a board of adjustment sits in a "quasi-judicial capacity" and has only the authority it is granted under that statute. *See Sherrill v. Town of Wrightsville Beach*, 76 N.C. App. 646, 649, 334 S.E.2d 103, 105 (1985); *Simpson v. City of Charlotte*, 115 N.C. App. 51, 55, 443 S.E.2d 772, 775 (1994). N.C. Gen. Stat. § 160A-388 provides that:

> The board of adjustment may reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from, and shall make any order, requirement, decision, or determination that in its opinion ought to be made in the premises. To this end the board shall have all the powers of the officer from whom the appeal is taken.

N.C. Gen. Stat. § 160A-388(b). Thus, in the present case, the Board had only the authority to reverse, affirm, or modify Officer Cliette's determination that Dobo's use of the sawmill violated the Zoning Ordinance. The Board did not have the authority to rule on petitioners' constitutional challenges to the validity of the Zoning Ordinance itself.

Furthermore, pursuant to N.C. Gen. Stat. § 160A-388(e), the superior court had the statutory power to review only the issue of whether Officer Cliette's determination was properly affirmed. *See Simpson*, 115 N.C. App. at 55, 443 S.E.2d at 775; *Sherrill*, 76 N.C. App. at 649, 334 S.E.2d at 105. The superior court did not have the statutory authority to address petitioners' constitutional challenges to the validity of the Zoning Ordinance. We note that such issues may be appropriately adjudicated by means of a separate civil action instituted in superior court. *See Batch v. Town of Chapel Hill*, 326 N.C. 1, 387 S.E.2d 655 (holding that petition for writ of certiorari to review town council decision denying subdivision permit was improperly joined with civil action alleging constitutional violations in denial of permit), *cert. denied*, 496 U.S. 931, 110 L. Ed. 2d 651 (1990); *Grace Baptist Church v. City of Oxford*, 320 N.C. 439, 358 S.E.2d 372 (1987) (involving civil action seeking declaratory judgment that city ordinance was unconstitutional). Thus, we hold that the superior court

did not err in concluding that petitioners are not entitled to raise constitutional objections to the Zoning Ordinance in this proceeding.

## II.

Petitioners' remaining assignments of error amount to three arguments in support of their general contention that the superior court erred in affirming the Board's decision that Dobo's use of the sawmill constituted a violation of the Zoning Ordinance.

## A.

[2] In their first argument, petitioners contend that the Board's decision was not supported by the evidence, and that it was arbitrary and capricious. Thus, we apply the "whole record" test, which ". . . 'requires the reviewing court to examine all the competent evidence . . . which comprise[s] the "whole record" to determine if there is substantial evidence in the record to support the [quasi-judicial body's] findings and conclusions.'" *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 273, 533 S.E.2d 525, 528 (citation omitted), *writ of supersedeas denied and disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000).

The Board's fourth conclusion of law states:

> 4. The use of the sawmill on the Dobo property is of an industrial nature involving a manufacturing process and is not a permitted accessory use under Sections 19-6 and 19-38 of the Zoning Ordinance. The use is not of a nature that is customarily incidental and subordinate to the primary residential use of the property.

Petitioners argue that the Board's determination was not supported by competent, material and substantial evidence in the whole record, and that it was arbitrary and capricious, because the evidence showed that Dobo's use of the sawmill was personal and recreational, rather than "industrial" or "involving a manufacturing process." We believe this argument is without merit. Even if the Board had characterized Dobo's use of the sawmill as personal and recreational, rather than industrial or involving a manufacturing process, there would still have been competent, material, and substantial evidence to support the conclusion that Dobo's use of the sawmill was "not of a nature that is customarily incidental and subordinate to the primary residential use of the property."

Dobo's property, and the surrounding property, are zoned "R-20 Residential District," which is defined by the City Zoning Ordinance

as "a residential district in which the principal use of land is for low density residential and recreational purposes." As noted above, the forty-horsepower, "super hydraulic sawmill" is powered by a five-gallon diesel engine, and is over twenty-four feet long, six feet wide, and seven feet high. It has the capacity to cut logs twenty-one feet long by three feet in diameter. Dobo's sawmill activities also include the use of a trailer, a backhoe with front-end loader, and a dump truck, the operation of which requires a commercial license. The sawmill and trailer together weigh nearly 4,000 pounds, and the backhoe weighs 12,000 pounds. Dobo mills lumber from trees procured not only from his own property, but from the property of relatives, neighbors, and others within and without New Hanover County. Dobo is aided in his milling by other individuals, including some of the paid employees of his business operation, Dobo Well Drilling.

We hold that there was competent, material, and substantial evidence in the record to support the Board's conclusion that, under the particular circumstances of this case, Dobo's use of the sawmill was "not of a nature that is customarily incidental and subordinate to the primary residential use of the property," and, therefore, violated the Zoning Ordinance.

The dissent argues that "[t]here is no evidence that the actual use of the saw by petitioners is for industrial or manufacturing purposes," and that "[a]ll of the evidence presented shows that petitioners used the Wood-Mizer saw for non-commercial and non-industrial purposes." The dissent appears to have been distracted from the core issue before us by the Board's superfluous statement that "[t]he use of the sawmill on the Dobo property is of an industrial nature involving a manufacturing process." Even if the dissent is correct that there is no evidence that Dobo uses the sawmill for industrial, manufacturing, or commercial purposes, this fact does not necessarily dispose of the core issue in this case: whether Dobo's use of the sawmill is "of a nature customarily incidental and subordinate to, the principal use or structure."

The dissent's reliance upon *Tucker v. Mecklenburg Cty. Zoning Bd. of Adjust.*, 148 N.C. App. 52, 557 S.E.2d 631 (2001), is misplaced. The ordinance in question in *Hodges* expressly distinguished between "private" and "commercial" dog kennels, and permitted the operation of a kennel as an accessory use only if the kennel was a "private kennel" and not "operated for commercial basis." *Id.* at 57, 557 S.E.2d at 635. Unlike the ordinance in *Hodges*, the ordinance in the present

case does not require a determination as to whether the use in question is "commercial" in nature; rather, it requires that the use be "of a nature customarily incidental and subordinate to, the principal use or structure."

We also note that the Board's order contains a similarly superfluous conclusion of law: "The use of the sawmill on the Dobo property is not a permitted use during the construction of the accessory structure on the property." Again we reiterate that the core issue in this case is whether, under the circumstances of this particular case, Dobo's use of the sawmill violated the zoning ordinance. The circumstances in this case include the fact that, since purchasing the sawmill in September of 1996, Dobo has used the sawmill for a variety of purposes, only one of which is the construction of a hobby shop pursuant to the building permit he received from the City. The question before the Board, therefore, was not whether Dobo's use of the sawmill would have violated the ordinance had he used the sawmill solely for the purpose of constructing the hobby shop.

B.

[3] Petitioners also argue that they were deprived of a fair evidentiary hearing in violation of their due process rights. Petitioners' due process rights entitled them to offer evidence, to cross-examine adverse witnesses, to inspect documents, to give sworn testimony, and to have written findings of fact supported by competent, substantial, and material evidence. *See Massey v. City of Charlotte*, 145 N.C. App. 345, 349-50, 550 S.E.2d 838, 842, *cert. denied*, 354 N.C. 219, 554 S.E.2d 342 (2001). Petitioners have not alleged that they were deprived of any of these particular due process rights. Rather, petitioners contend that the hearing improperly included hearsay evidence, irrelevant evidence, and inaccurate evidence, among other things.

Even assuming *arguendo* that the evidence noted by petitioners was incompetent and, therefore, insufficient to serve as support for conclusions of the Board, *see, e.g., Sun Suites Holdings*, 139 N.C. App. at 276, 533 S.E.2d at 530, the mere presence of such incompetent evidence during a hearing does not, without more, entitle an appellant to a reversal of the Board's decision. The question is whether there is substantial evidence in *the whole record* to support the findings and conclusions. Because we have already concluded that there was competent, material, and substantial evidence in the record to support the Board's determination, we reject petitioners' argument

that the admission of other arguably incompetent evidence deprived petitioners of a fair hearing.

## C.

[4] Finally, petitioners argue that the superior court erred in affirming the Board's determination because neither the Board nor a Code Enforcement Officer is authorized to find facts and make conclusions regarding any matter governed by the North Carolina Building Code. We hold that this issue is not properly before us. The assignment of error that corresponds to this argument cites the Board's order and the superior court's order, neither of which address this issue. The assignment of error also cites the entire transcript of the hearing before the superior court. Because petitioners have not directed our attention to any specific place in the record indicating that this issue was previously raised and addressed before the Board or the superior court, we decline to address this argument.

For the reasons stated herein, we affirm the superior court's order affirming the determination of the Board. .

Affirmed.

Judge GREENE concurs.

Judge TYSON concurs in part and dissents in part in a separate opinion.

TYSON, Judge, concurring in part and dissenting in part.

I concur in the result reached by the majority in parts I, IIB, and IIC of their opinion. I respectfully dissent from part IIA of the majority's opinion as I would hold that petitioners' actual use of the Wood-Mizer portable band saw does not violate the Zoning Ordinance.

## IIA.

Petitioners argue that the Board's decision was not supported by competent evidence, and is arbitrary and capricious. I agree. Section 19-6 of the Zoning Ordinance defines the term "accessory use":

> Accessory use or structure: A use or structure on the same lot with, and of a nature customarily incidental and subordinate to, the principal use or structure (i.e. pump house, home occupation, tool shed, detached garage, storage shed, garage apartment, and other uses as determined by the Code Enforcement Officer).

All of the evidence presented shows that petitioners used the Wood-Mizer saw for non-commercial and non-industrial purposes, as well as for the construction of a fully permitted hobby woodworking shop to be located on their property.

I disagree with the majority that because the saw is powered by a forty-horsepower diesel engine; is twenty-six feet four inches in length, six feet six inches wide, seven feet seven inches high; includes the use of a trailer, backhoe, front-end loader, and dump truck; and is capable of cutting logs twenty-one feet long by three inches in diameter automatically converts the use of the Wood-Mizer saw into an industrial use or involves a manufacturing process. Adopting the reasoning of the majority would allow the City to prohibit petitioners' private automobile, with a 200 horsepower engine and a twenty gallon gas tank, because it could be used as a commercial taxicab.

Construction necessarily requires heavy equipment to complete the improvements, such as bulldozers, dump trucks, and front-end loaders for clearing and grading of the land, as well as cranes to set trusses on the structure. Here, the record shows that the backhoe, front-end loader, and dump truck were also legally located on petitioners' 3.2 acre tract, as petitioners legally operate a well drilling business on their property. The Board's and majority's focus is solely on the size and possible uses of the saw, not its actual use by petitioners. Their assertions are insufficient to prohibit petitioners' non-industrial use of their saw.

The conclusion of the Board that "[t]he use of the sawmill on the Dobo property is not a permitted use during the construction of the accessory structure on the property" is not supported by substantial, competent evidence. There is no evidence in the record that petitioners' use of the Wood-Mizer saw to construct a fully permitted woodworking hobby shop is not a permitted use during construction. Testimony by the Code Enforcement Officer that the use of the saw would not be customary is speculative as he further testified that he does not enforce the building code. *See C.C. & J. Enter., Inc. v. City of Asheville*, 132 N.C. App. 550, 553, 512 S.E.2d 766, 769, *disc. review improvidently allowed*, 351 N.C. 97, 521 S.E.2d 117 (1999) (speculative assertions or mere expression of opinion about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body).

This Court in *Tucker v. The Mecklenburg Cty. Zoning Bd. of Adjust.*, 148 N.C. App. 52, 557 S.E.2d 631 (2001), addressed a similar

issue involving the operation of a dog kennel by respondents on their residentially zoned property. The zoning ordinance in *Tucker* permitted the operation of a private kennel as an accessory use and prohibited the operation of a commercial kennel. While in all respects the kennel operated by respondents could have been used as a commercial kennel, the Board of Adjustment found that because the dogs were adopted and not sold, the kennel was not a commercial kennel but a private kennel permitted as an accessory use under the zoning ordinance. *Id.* at 57, 557 S.E.2d at 635-36. This Court agreed and reversed the trial court's order finding the kennel to be a commercial kennel in violation of the zoning ordinance. *Id.* at 60, 557 S.E.2d at 636.

Here, the evidence clearly establishes that petitioners used the saw primarily for the construction of a permitted and allowed hobby woodworking shop behind their home and occasionally for the cutting of lumber for friends without charge. There is no evidence that the actual use of the saw by petitioners is for industrial or manufacturing purposes nor that it is not "of a nature that is customarily incidental and subordinate to" the residential use of their property. The actual use of the saw in this case is an accessory use and does not violate the Zoning Ordinance. Counsel for respondent conceded that the construction of the hobby shop is fully permitted and is an allowed accessory use of petitioners' residentially zoned property. Accordingly, I would hold that the Board's decision was not supported by substantial, competent evidence and was arbitrary and capricious.

Petitioners argue that if we scratch the surface facts, it is readily apparent that this action is a thinly veiled attempt by the residents of the adjoining subdivision to impose *de facto* restrictive covenants onto petitioners' property that were never bargained for nor agreed to by petitioners.

The general rule is that a zoning ordinance, being in derogation of common law property rights, should be construed in favor of the free use of property. *See Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966); *City of Sanford v. Dandy Signs, Inc.*, 62 N.C. App. 568, 569, 303 S.E.2d 228, 230 (1983). Zoning regulations are not a substitute for private restrictive covenants. If the subdivision residents believe that petitioners' use of their property is unreasonable, their remedy is an action in nuisance, not to enlist the City as an accomplice by incessant complaints about their neighbor.

The record shows that petitioners have owned, used, and lived on their property for half a century. The recent addition of an exclusive, walled, and gated subdivision on adjoining property does not convert petitioners' lawful use into an illegal one, simply because petitioners' use is inconsistent with the permitted uses within the adjoining subdivision.

Purchasers of lots in a subdivision development, located in formerly rural areas that are rapidly urbanizing, have the duty to inform themselves of uses on adjoining, but unrestricted, property that may not compliment the restrictions and uses that subdivision residents privately covenant among themselves and that apply solely within the confines of their development.

Petitioners further object to the irrelevant statements made by the adjoining neighbors to the Board as to noise and smell from petitioners' property, burning by petitioners on their property, and junk on petitioners' property. The record clearly shows and counsel for respondent conceded that despite numerous visits to petitioners' property, no violation of the penal noise ordinance was found or other ordinances. While there is no indication that the Board's decision was based on this testimony, speculative opinions such as these fail to constitute substantial competent evidence to support a finding that the petitioners' use was not an accessory use. See C.C. & J., 132 N.C. App. at 553, 512 S.E.2d at 769. There is no competent evidence in the record that petitioners' actual use of the Wood-Mizer saw did not constitute an accessory use under the Zoning Ordinance. I would reverse the superior court's order, affirming the 3-2 decision of the Board, and dissent from part IIA of the majority's opinion.