**FOUR SEASONS MGMT. SERVS., INC. v. TOWN OF WRIGHTSVILLE BEACH**

[205 N.C. App. 65 (2010)]

Petitioners argue that AHO's estimate did not qualify as a certified estimate under section 131E-178(d). The Agency did not ultimately decide whether the estimate provided by AHO's architect qualified as a certified cost estimate under this section, because the Agency found that the evidence established that the actual construction costs for the project would not exceed the relevant cost thresholds in the CON Law. Thus, the Agency found that section 131E-178(d) was not applicable in this instance. In light of the Agency's finding and based on our holding that the Agency properly determined the AHO project did not require a CON, we need not decide whether AHO's cost estimate constituted a certified cost estimate under section 131E-178(d).[10]

*Conclusion*

For the foregoing reasons, we affirm the Final Agency Decision adopting the recommended decision of the Administrative Law Judge.

AFFIRMED.

Chief Judge MARTIN and Judge HUNTER, JR. concur.

———————————

FOUR SEASONS MANAGEMENT SERVICES, INC., PETITIONER v. TOWN OF WRIGHTSVILLE BEACH, BOARD OF ADJUSTMENT AND THE TOWN OF WRIGHTSVILLE BEACH, RESPONDENTS

No. COA09-777

(Filed 6 July 2010)

**1. Zoning— conditional use permit—new parking deck— amendment required**

The trial court did not err by upholding the Wrightsville Beach Board of Adjustment's decision that petitioner could not build a proposed parking deck without seeking and obtaining an amendment to its conditional use permit. Neither the ordinance nor the decisions upon which petitioner relied supported the argument that accessory structures are permitted as a matter of right regardless of the nature or size of the structure.

**2. Zoning— new parking deck—non-conforming use— expansion**

The trial court did not err by upholding the Wrightsville Beach Board of Adjustment's conclusion that the Town had properly denied ·petitioner's request to build a multi-story parking deck because the deck would constitute expansion of a non-conforming use.

**3. Estoppel— judicial—challenge to ruling heard**

The question of whether petitioner was judicially estopped from challenging the Town's decision that petitioner must obtain an amendment to its conditional use permit to build a parking deck was not addressed where petitioner was not prevented from challenging that determination before the Board of Adjustment, the trial court, or the Court of Appeals.

Appeal by petitioner from judgment entered 17 February 2009 by Judge Charles H. Henry in New Hanover County Superior Court. Heard in the Court of Appeals 11 January 2010.

*Shanklin & Nichols, LLP, by Kenneth A. Shanklin, and Matthew A. Nichols, for Petitioner-Appellant.*

*Wessell & Raney, L.L.P., by John C. Wessell, III, for Respondents-Appellees.*

ERVIN, Judge.

Petitioner Four Seasons Management Services, Inc., appeals from the trial court's order upholding a decision by Respondents Town of Wrightsville Beach and the Town of Wrightsville Beach Board of Adjustment denying Petitioner's request to build a four-story parking deck at a hotel which it owns in Wrightsville Beach, North Carolina, without seeking and obtaining an amendment to its conditional use permit. After careful consideration of Petitioner's challenges to Respondent's decision in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

On 15 May 1972, the Town adopted a zoning ordinance, which became effective on the date of enactment. The zoning ordinance includes detailed provisions defining various zoning districts and the

types of structures,[1] buildings,[2] and uses[3] permitted in each district and establishing specific requirements relating to a number of subjects, including, but not limited to, the necessity for obtaining approval prior to undertaking certain construction projects, the number of parking spaces required at hotels and motels, and landscaping. The zoning ordinance also includes provisions addressing administration and enforcement issues.

Petitioner owns and operates a hotel known as the Blockade Runner in Wrightsville Beach. A hotel has been operated at the site of the Blockade Runner for over a century. The Blockade Runner is not in compliance with the zoning ordinance in a number of respects. For example, the Blockade Runner does not have the required number of off-street parking spaces and violates the applicable setback requirements on its south side. Because it was constructed prior to the effective date of the zoning ordinance, the Blockade Runner is classified as a nonconforming use[4] and is entitled, for that reason, to operate despite its noncompliance with various provisions of the zoning ordinance.

The Blockade Runner is located in a "C-4" zoning district, which allows "accessory uses"[5] as a matter of right and permits the operation of hotels as a "conditional use." As a nonconforming use, the Blockade Runner did not obtain a conditional use permit[6] prior to

---

1. A "structure" is defined in § 155.002 of the zoning ordinance as "[a]nything constructed or erected, the use of which requires more or less permanent location on the ground, or attached to something having more or less permanent location on the ground."

2. A "building" is defined in § 155.002 of the zoning ordinance as "[a]ny structure enclosed and isolated by exterior walls constructed or used for residence, business, industry, or other public or private purpose, or accessory thereto."

3. A "use" is defined in § 155.002 of the zoning ordinance as "[t]he specific activity or function, for which land, a building, or a structure is designated, arranged, intended, occupied, or maintained."

4. According to § 155.002 of the zoning ordinance, a "nonconforming use" is defined as "[a]ny building, land or other areas subject to this chapter lawfully occupied by a use on the effective date of this chapter or amendment thereto which does not conform after the passage of this chapter or amendment with the use requirements of the district in which it is situated," including "the activity that constitutes the use made of the property."

5. An "accessory use" is defined in § 155.002 of the zoning ordinance as "[a] use customarily incidental and subordinate to the principal use or building and located on the same lot with the principal use or building."

6. A "conditional use permit" is "[r]equired for all stated conditional uses including building, development, land use, and the like" and involves the use of a process that

construction. However, Petitioner applied for and obtained a conditional use permit authorizing the enclosing of a portion of the lobby area for use as a solarium on 26 April 1984. Subsequently, Petitioner obtained an amendment authorizing the construction of stairs associated with a health spa on 24 January 1985 and another amendment authorizing the construction of an open-air gazebo on 24 June 1991.

On 25 April 2006, Petitioner requested authorization to "construct a one-story parking deck" over its existing parking area. In addition, Petitioner sought approval for variances relating to setbacks and parking requirements. On 26 April 2006, the Town's Development Code Administrator denied Petitioner's request for the following reasons:

> After conferring with the Town Attorney, it has been determined that construction of the parking deck requires an amendment to the Blockade Runner's existing conditional use permit. The Town of Wrightsville Beach Table of Uses lists hotels and motels as a conditional-use in the C-4, Commercial District. It has been the practice of the Town to require amendments to existing conditional-use permits for changes or additions to structures requiring a conditional-use permit. In addition, the Town does not agree with your classification of the parking deck as an accessory structure[7] or accessory use. . . .

> In addition, as acknowledged in your application, the parking deck as proposed violates the requirements of § 155.047 regarding setbacks and § 155.060 regarding required parking. Furthermore, the proposed parking deck encroaches into the 20-ft. sight triangle required by § 155.014. It should be noted that the plans as proposed do not bring the parking lot into compliance with the Landscaping Ordinance as required by § 155.181(5).

On 5 May 2006, Petitioner appealed from the Administrator's decision to the Board of Adjustment.

---

"requires that certain stipulations, projections, prerequisites, qualifications, and the like will be fulfilled if the proposed project is to be permitted" according to § 155.002 of the zoning ordinance. The zoning ordinance, in § 155.025(A), requires conditional use permits for certain land uses which, "because of their unique characteristics, cannot be properly classified in any particular district, or districts, without consideration, in each case of the impact of those uses upon neighboring land uses and of the public need for the particular use in the particular location."

7. An "accessory structure" is defined in § 155.002 of the zoning ordinance as a "detached subordinate structure(s), the use of which is incidental to that of the principal structure and located on the same lot therewith."

FOUR SEASONS MGMT. SERVS., INC. v. TOWN OF WRIGHTSVILLE BEACH

[205 N.C. App. 65 (2010)]

On 12 October 2006, Petitioner submitted revised plans and requested authorization to build a four-story parking deck over its existing parking area.[8] On 19 October 2006, the Town's Director of Planning and Parks denied Petitioner's revised request. In denying Petitioner's revised request, the Director restated the Town's previously-enunciated position that Petitioner could not "construct the parking deck without going through the conditional-use process"; reiterated the Town's disagreement with "classification of the parking deck as an accessory structure or accessory use"; and pointed out that the proposed parking deck violated the requirements for the number of parking spaces and did "not bring the parking lot into conformity with the Landscaping Ordinance as required by § 155.181(5)." Finally, the Director noted that the proposed plans would not bring the parking lot into conformity with the requirements for fire sprinklers contained in § 94.46 of the zoning ordinance. On 25 October 2006, Petitioner supplemented its 5 May 2006 appeal by appealing to the Board from the Director's 19 October 2006 decision.

On 29 November 2006, the Board conducted a hearing on Petitioner's appeal, at which it received testimony and considered the arguments of counsel. At the conclusion of the hearing, the Board voted not to reverse the Director's decision. On 29 February 2008, the Board issued a written order in which it stated the following conclusions:

24. It is the Board's position that the issues to be addressed by it include the following:

a. Was the Administrator correct in denying the request to construct the 4-story parking deck without the Petitioner first seeking an amendment to its existing conditional use permit?

b. Was the Administrator correct in denying the request to construct the 4-story parking deck because the construction of the proposed parking deck constitutes an expansion of a permitted non-conforming use?

c. Is the Petitioner judicially estopped to challenge the requirement for a conditional use permit when the Petitioner, on at least three prior occasions, has accepted benefits under the ordinance requiring an amendment to its conditional use permit

---

8. The transition from a one story parking deck to a four story parking deck obviated the necessity for Petitioner to obtain the variances that had been requested in its original application.

d. Was the Administrator correct in denying the request to construct the 4-story parking deck because the plan for the proposed parking deck fails to comply with the landscaping ordinance of the Town as set forth in § 155.180 *et seq.* Of the zoning ordinance?

25. WAS THE ADMINISTRATOR CORRECT IN DENYING THE REQUEST TO CONSTRUCT THE 4-STORY PARKING DECK WITHOUT THE PETITIONER FIRST SEEKING AN AMENDMENT TO ITS EXISTING CONDITIONAL USE PERMIT?

**ANSWER:** Yes.

26. This Board is of the opinion and concludes that the Petitioner must secure an amendment to its existing conditional use permit in order to construct the proposed parking deck. In support of this position, the Board concludes as follows:

a. The zoning ordinances permit accessory uses in all zoning districts. The table of uses does not address accessory buildings or accessory structures. Neither accessory buildings nor accessory structures are indicated as permitted in any district.

b. The proposed parking deck is an accessory building. While parking may constitute an accessory use, a 4-story parking deck does not constitute an accessory use.

c. In the alternative, the Board finds that the proposed parking deck is not accessory to the principal use, that being a hotel, but rather the proposed parking deck is part of the principal use of the property. It is clear from the testimony of the Petitioner's representatives that the hotel cannot exist without available parking.

d. In attempting to discern the intent of the Town ordinances, the Board took into consideration the testimony of the Administrator that it has been the practice of the Town during the Administrator's ten years of employment to require property owners wishing to expand structures that are subject to an existing conditional use [permit] to secure an amendment to the existing conditional use permit.

27. WAS THE ADMINISTRATOR CORRECT IN DENYING THE REQUEST TO CONSTRUCT THE 4-STORY PARKING DECK BECAUSE THE CONSTRUCTION OF THE PROPOSED PARKING

DECK CONSTITUTES AN EXPANSION OF A PERMITTED NON-CONFORMING USE?

**ANSWER:** Yes.

a. The existing hotel is non-conforming in that it violates the setbacks on at least one side of the structure and because the parking requirements are not currently met and will not be met even if the 4-story parking deck is constructed.

b. Section 155.009 of the zoning ordinances prohibits the expansion of a permitted non-conforming use.

C. The only way in which the parking deck can be constructed is for the hotel to be brought into compliance with current ordinances. Otherwise, the construction of the parking deck is an expansion of a permitted non-conforming use.

28. IS THE PETITIONER JUDICIALLY ESTOPPED TO CHALLENGE THE REQUIREMENT FOR A CONDITIONAL USE PERMIT WHEN THE PETITIONER, ON AT LEAST THREE PRIOR OCCASIONS, HAS ACCEPTED BENEFITS UNDER THE ORDINANCE REQUIRING AN AMENDMENT TO ITS CONDITIONAL USE PERMIT?

**ANSWER:** Yes.

a. The Petitioner has previously applied for and been granted three conditional use permits or amendments to the existing conditional use permit.

b. On each of these occasions, the Petitioner has acknowledged the need to secure an amendment to its existing conditional use permit in order to make additions or changes to its hotel.

c. The Petitioner has taken advantage of each of the three previously issued conditional use permits and has constructed additions to the hotel pursuant to the authority granted by those permits.

d. Having taken advantage of the prior permits, the Petitioner is estopped to now challenge the requirement to secure an amendment to its existing conditional use permit.

29. WAS THE ADMINISTRATOR CORRECT IN DENYING THE REQUEST TO CONSTRUCT THE 4-STORY PARKING DECK

BECAUSE THE PLAN FOR THE PROPOSED PARKING DECK FAILS TO COMPLY WITH THE LANDSCAPING ORDINANCE OF THE TOWN AS SET FORTH IN § 155.180 *ET SEQ.* OF THE ZONING ORDINANCES?

> **ANSWER:** Yes.

> a. The Petitioner's witnesses at the hearing admitted that the proposed plan did not comply with the Town's landscaping ordinances.

> b. There is nothing in the Town's ordinances to excuse this proposed plan from the provisions of the landscaping ordinances as set forth in the Town ordinances.

On 29 December 2006, Petitioner filed a petition seeking the issuance of a writ of *certiorari* permitting review of the Board's decision in the New Hanover County Superior Court. On 6 March 2008, the trial court held a hearing for the purpose of allowing the parties to be heard with respect to the validity of the Board's decision. On 17 February 2009, the trial court entered an order affirming the Board's decision. In its order, the trial court concluded, among other things, that:

> 10. The only way for Petitioner's argument to succeed is if this Court accepts the proposition that all accessory structures are accessory uses. For the reasons set forth below, this Court refused to accept this argument and for that reason, among others, finds that the Board of Adjustment acted properly in upholding the decision of the Town's Planning and Parks Director.

> . . . .

> 12. The Zoning Ordinances draw a clear distinction between a "Use" and a "Structure" or "Building." Use is defined as "The specific activity or function for which land, a building, or a structure is designated, arranged, intended, occupied, or maintained." The definitions of accessory structure and accessory building make clear references to actual physical structures of some kind. The Petitioner would have this Court accept the argument that an accessory use is the same as an accessory structure or an accessory building. The Zoning Ordinances of the Town simply do not support this contention. Further, the only use permitted in all districts without the issuance of a conditional use permit is an "accessory use." Accessory structures and accessory buildings

are not mentioned specifically in the Table of Uses found in the Town's Zoning Ordinances and therefore are not permitted as a matter of right in all zoning districts. . . .

. . . .

14. Application of these rules leads to the conclusion that accessory structures and accessory buildings are not the same as accessory uses and further, that accessory structures and accessory buildings are not permitted in any zoning districts as a matter of right under the Town's Zoning Ordinances. . . .

. . . .

27. The clear lesson from *Cannon v. Bd. of Adjustment of Wilmington*, 65 N.C. App. 44, 308 S.E.2d 735 (1983),] and *Stegall v. Bd. of Adjustment of New Hanover*, 87 N.C. App. 359, 361 S.E.2d 309 (1987), *disc. review denied*, 321 N.C. 480, 364 S.E.2d 671 (1988),] is that this Court must look to the zoning ordinances of the Town of Wrightsville Beach in order to determine if the proposed parking deck constitutes an expansion of a permitted non-conforming use. The [decision in *Jirtle v. Board of Adjust. for the Town of Biscoe*, 175 N.C. App. 178, 622 S.E.2d 713 (2005),] is of no help since that decision involves interpretation of an entirely different ordinance. The issue for this Court is whether the construction of the four story parking deck is a change in degree of activity or a change in the kind of activity.

28. The Court concludes that the construction of a four story parking deck utilizing mechanical devices for the location of vehicles within that deck is a significantly different kind of activity from a conventional ground level parking deck. For that reason, the proposed four story parking deck constitutes an impermissible expansion of a permitted non-conforming use.

. . . .

32. As previously noted, the Petitioner has been issued three conditional use permits. . . . In securing these permits, the Petitioner has gone through the process of acquiring an amendment to its conditional use permit. The Petitioner has accepted the benefits given to it under the conditional use permit process and has undertaken construction repairs and alterations of its hotel pursuant to the authority granted by these conditional use permits. Now the Petitioner claims it is not required to secure an amendment to its conditional use permit as a prerequisite to construct-

ing the four story parking deck. The Town contends that the Petitioner is judicially estopped from claiming a right to construct the four story parking deck without going through the conditional use permit [process] on the grounds that the Petitioner has previously acknowledged on three separate occasions that conditional use permits are required for expansion, was granted amendments to conditional use permits and took advantage of the authority given under those permits. Since the Petitioner has previously applied for and been granted conditional use permits, and has taken advantage of the construction permitted by those permits, it is judicially estopped to now challenge the requirement for a conditional use permit.

. . . .

35. As in [Convent v. Winston-Salem, 243 N.C. 316, 90 S.E.2d 879 (1956), and Goforth Properties, Inc. v. Town of Chapel Hill, 71 N.C. App. 771, 323 S.E.2d 427 (1984),] the Petitioner has accepted the benefits of the conditional use permits previously granted. The Petitioner is now estopped to claim that it can proceed with a new addition to its hotel without seeking a conditional use permit.

36. The landscaping ordinances are found in Sections 155.180 through 155.188 of the Town's Code of Ordinances. Sec. 155.181 provides that the sections dealing with landscaping shall apply "when there is an expansion of the parking facility by a minimum of 10% of the parking with a minimum of 10 total spaces." Clearly this proposed parking deck falls under that requirement.

37. Sec. 155.104 outlines the requirements for landscaping for parking facilities. The architect for the Petitioner . . . testified before the Board of Adjustment that he was " . . . unable to really get the interior landscaping as the ordinance required." [The architect] went on to testify that the ordinance required a landscaping island to be every 15 feet and the plans which he prepared did not include such landscaping islands on the interior of the parking deck. [The] Planning and Parks Director for the Town, testified before the Board of Adjustment that the plans submitted by Petitioner did not comply with the landscape ordinance of the Town of Wrightsville Beach.

38. It is clear from the testimony of [the architect] and [the Planning and Parks Director] that the plans submitted by the

Petitioner did not comply with the landscaping ordinance of the Town and the Town officials were correct in denying the request to construct the four story parking deck.

On 16 March 2009, Petitioner noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Standard of Review

Judicial review of the decisions of a municipal board of adjustment is authorized by N.C. Gen. Stat. § 160A-388(e2), which provides, in pertinent part, that "[e]very decision of the board shall be subject to review by the superior court by proceedings in the nature of *certiorari.*" "Upon review of a decision from a Board of Adjustment, the trial court should:

'(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.' "

*Wright v. Town of Matthews,* 177 N.C. App. 1, 8, 627 S.E.2d 650, 656 (2006) (quoting *Knight v. Town of Knightdale,* 164 N.C. App. 766, 768, 596 S.E.2d 881, 883 (2004)). "If a petitioner contends the Board's decision was based on an error of law, '*de novo*' review is proper. However, if the petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the 'whole record' test." *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner,* 139 N.C. App. 269, 272, 533 S.E.2d 525, 527-28, *disc. review denied,* 353 N.C. 280, 546 S.E.2d 397 (2000) (quoting *JWL Invs., Inc. v Guilford County Bd. of Adjust.,* 133 N.C. App. 426, 429, 515 S.E.2d 715, 717, *disc. review denied,* 351 N.C. 357, 540 S.E.2d 349 (1999)). "[W]hen sitting as an appellate court to review a [decision of a quasi-judicial body], [the trial court] must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.' " *Sun Suites, id.* (quoting *Sutton v. N.C. Dep't of Labor,* 132 N.C. App. 387, 389, 511 S.E.2d 340, 342 (1999)). "On review of the trial court's order, this Court must determine whether the trial court cor-

rectly applied the proper standard of review." *Wright,* 177 N.C. App. at 8, 596 S.E.2d at 883.

### B. Specific Challenges to Trial Court's Order

### 1. Necessity for Amendment to Conditional Use Permit

[1] On appeal, Petitioner argues that the trial court erred by upholding the Town's "administrative determinations which denied the Petitioner the right to construct a multistory parking deck upon its property[.]" As a preliminary matter, we note that the Town did not unequivocally "deny" Petitioner the right to construct a parking deck. Instead, the Town denied Petitioner's request to construct the proposed parking deck without seeking and obtaining an amendment to its existing conditional use permit. As a result, the ultimate issue which we must resolve is the extent, if any, to which Petitioner was entitled under the zoning ordinance to construct the proposed parking deck without undergoing the conditional use permit process.

A proper resolution of Petitioner's challenge to the Board of Adjustment's ruling requires us to interpret various provisions of the Wrightsville Beach zoning ordinance.

> Questions involving interpretation of zoning ordinances are questions of law. Accordingly, the superior court is to apply a *de novo* standard of review to Board decisions involving application and interpretation of zoning ordinances, and the court may freely substitute its judgment for that of the Board. . . . [O]n appeal of the judgment of the superior court, this Court must apply a *de novo* standard of review in determining whether 'the superior court committed error of law in interpreting and applying the municipal ordinance,' and may also freely substitute its judgment for that of the superior court.

*Hayes v. Fowler,* 123 N.C. App. 400, 404, 473 S.E.2d 442, 444-45 (1996) (citing *Ayers v. Bd. of Adjust. for Town of Robersonville,* 113 N.C. App. 528, 531, 439 S.E.2d 199, 201, *disc. review denied,* 336 N.C. 71, 445 S.E.2d 28 (1994), and quoting *Capricorn Equity Corp. v. Town of Chapel Hill,* 334 N.C. 132, 137, 431 S.E.2d 183, 187 (1993)). Since Petitioner does not argue that the trial court applied the wrong standard in resolving this issue, we will proceed directly to an examination of the relevant provisions of the zoning ordinance.

"The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances." *Cogdell v. Taylor,* 264 N.C. 424, 428, 142 S.E.2d 36, 39 (1965) (citing *In re*

*O'Neal*, 243 N.C. 714, 92 S.E.2d 189 (1956), and *Perrell v. Service Co.*, 248 N.C. 153, 102 S.E.2d 785 (1958)). "In interpreting a municipal ordinance '[t]he basic rule is to ascertain and effectuate the intent of the legislative body.'" *Capricorn*, 334 N.C. at 138, 431 S.E.2d at 187-88 (quoting *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980)). "We look to the language of the enabling act and the city ordinance to ascertain the intent of the legislative bodies." *Financial Services v. Capitol Funds*, 288 N.C. 122, 134, 217 S.E.2d 551, 559 (1975). "Unless a term is defined specifically within the ordinance in which it is referenced, it should be assigned its plain and ordinary meaning. In addition, we avoid interpretations that create absurd or illogical results." *Ayers*, 113 N.C. App. at 531, 439 S.E.2d at 201 (citing *Rice Associates v. Town of Weaverville Bd. of Adjust.*, 108 N.C. App. 346, 423 S.E.2d 519 (1992), and *Pritchard v. Elizabeth City*, 81 N.C. App. 543, 344 S.E.2d 821, *disc. review denied*, 318 N.C. 417, 349 S.E.2d 598 (1986)). In addition, because "the function of a board of adjustment is to interpret local zoning ordinances[, s]ome deference is given to the board's interpretation of its own city code." *Tucker v. Mecklenburg Cty. Zoning Bd. of Adjust.*, 148 N.C. App. 52, 57, 557 S.E.2d 631, 635 (2001), *aff'd in part, disc. review improvidently granted in part*, 356 N.C. 658, 576 S.E.2d 324 (2003) (citing *CG & T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 39, 411 S.E.2d 655, 659 (1992)).

Petitioner argues on appeal, as it did before the Board and the trial court, that it is not required to seek and obtain an amendment to its conditional use permit as a prerequisite to constructing the parking deck because the zoning ordinance permits a landowner to construct an "accessory structure" and use his property for an "accessory use" without obtaining prior authorization. In essence, Petitioner contends that: (1) it is entitled to engage in "accessory uses" of its property without obtaining prior authorization from the zoning administration and enforcement authorities; (2) parking is an "accessory use" under the zoning ordinance; (3) a parking deck is an "accessory structure" under the zoning ordinance since the use of such a structure is subordinate and incidental to the operation of a hotel; (4) one needs "accessory structures" in order to engage in "accessory uses"; and (5) for that reason, the right to engage in an "accessory use" on one's property without obtaining prior approval necessarily includes the right to construct an "accessory structure" in which to conduct the proposed "accessory use" without obtaining prior approval. In other words, Petitioner's argument equates an "acces-

sory use" with an "accessory structure." We do not find this logic persuasive for several reasons.

The validity of Petitioner's argument hinges upon the assumption that "accessory structures" are equivalent to "accessory uses." The term "use" is defined in the zoning ordinance as " '[t]he specific activity or function for which land, a building or a structure is designated, arranged, intended, or maintained." As we have previously noted, an "accessory use" is defined as a "use customarily incidental and subordinate to the principal use or building and located on the same lot with the principal use or building." Thus, the zoning ordinance clearly intends for the term "accessory use" to refer to something that someone does. A "structure," on the other hand, is defined as "[a]nything constructed or erected, the use of which requires more or less permanent location on the ground, or attached to something having more or less permanent location on the ground." The zoning ordinance defines an "accessory structure" as a "detached subordinate structure[s], the use of which is incidental to that of the principal structure and located on the same lot therewith." As a result, the definitional provisions of the zoning ordinance clearly indicate that an "accessory structure" is a physical object. As a result, the relevant provisions of the zoning ordinance simply do not treat "accessory uses," which are activities, and "accessory structures," which are physical objects, as equivalent, so that the fact that "accessory uses" are permitted as a matter of right in the zoning district in which the Blockade Runner is located does not establish that Petitioner is entitled to construct an "accessory structure" on its property as a matter of right.[9]

As further support for its assertion that, "[g]enerally speaking, accessory structures and uses are permitted without more permission," Petitioner cites *Dobo v. Zoning Bd. of Adjust. of the City of Wilmington*, 149 N.C. App. 701, 562 S.E.2d 108 (2002), *reversing per curiam*, 356 N.C. 656, 576 S.E.2d 324 (2003), and *Tucker*, 148 N.C. App. at 52, 557 S.E.2d at 631. However, neither of these decisions holds that accessory structures are "generally" treated like accessory uses or that accessory structures are "generally" allowed without the necessity for the landowner to obtain "more permission." On the contrary, *Dobo* addressed the issue of whether the landowner's operation of a portable sawmill in his yard constituted an "accessory use,"[10]

___

9. The validity of this point is reinforced by the fact that the Table of Uses contained in the zoning ordinance makes no reference to "accessory structures."

10. *Dobo* addresses a zoning ordinance that defined "accessory use" as "[a] use or structure on the same lot with, and of a nature customarily incidental and subordinate

while *Tucker* addressed the issue of whether a kennel was a permissible accessory use in a multi-family zoning district or was barred under an ordinance provision prohibiting commercial kennels in such areas. Both decisions focused on the use made of the property in question; neither mentioned the subject of accessory structures. In addition, Petitioner cites *Allen v. City of Burlington Bd. of Adjustment*, 100 N.C. App. 615, 397 S.E.2d 657 (1990), for the proposition that accessory structures are allowed as a matter of right under the zoning ordinance. As was the case with *Dobo* and *Tucker*, however, *Allen* deals solely with the use to be made of existing property without mentioning any right to construct an accessory structure. Thus, none of the decisions upon which Petitioner relies provides any support for its position.

Moreover, it is clear that the general import of the zoning ordinance is to require approval from the relevant zoning officials before any major construction project is undertaken. More specifically, § 155.126 of the zoning ordinance provides that "[n]o building or other structure shall be erected, moved, added to, or structurally altered without a permit therefor issued by the Planning and Inspections Department." As a result, we conclude that the zoning ordinance evidences a general intent to supervise construction of any "building or other structure" which intent would be undercut by the adoption of an interpretation of the ordinance that allowed the construction of a large parking deck without any review by zoning administration and enforcement officials.

Finally, the Wrightsville Beach zoning ordinance classifies hotels as conditional uses regardless of the zoning district in which they are located. According to the relevant provisions of the zoning ordinance, a project that is required to obtain a conditional use permit, such as a hotel, must submit a site plan, be the subject of consideration at a public hearing, and obtain a determination by the Board that the "proposed structure [or] improvement . . . meet[s] all requirements of all applicable codes, ordinances, and specifications of the municipality, county, state, or federal governments or other agencies having proper jurisdiction[.]" The Town has consistently "require[d] amendments to the existing conditional use permits for changes or additions to structures requiring a conditional use permit."[11] In light of the consider

to, the principal use or structure[.]" *Dobo*, 149 N.C. App. at 703, 562 S.E.2d at 110. The reference to a "use or structure" made the zoning ordinance at issue in that case different from the one at issue here, which does not equate uses and structures.

11. Petitioner has neither disputed the accuracy of this claim nor challenged its lawfulness.

able scrutiny to which conditional uses, such as hotels, are subjected under the zoning ordinance, it would be contrary to the general treatment afforded to hotels for Petitioner to be allowed to construct a four story parking deck without the necessity for obtaining an amendment to its conditional use permit.[12]

As a result, for all of these reasons, we conclude that Petitioner is required to obtain an amendment to its conditional use permit before constructing the proposed parking deck. Neither the zoning ordinance nor the appellate decisions upon with Petitioner relies support Petitioner's argument that accessory structures are permitted as a matter of right, regardless of the nature or size of the structure. Thus, the trial court did not err by upholding the Board of Adjustment's decision that Petitioner · could not construct the proposed parking deck without seeking and obtaining an amendment to its conditional use permit.[13]

### 2.  Expansion of Non-Conforming Use

[2]  Secondly, Petitioner argues that the trial court erred by upholding the Board's conclusion that the Town properly denied Petitioner's request to build a multi-story parking deck because its proposed deck would constitute an expansion of a non-conforming use. We disagree.

"Where the evidence is not in conflict, the question of whether a particular activity will be deemed a permissible continuation, or an impermissible expansion, of a nonconforming use is a question of law." *Stegall*, 87 N.C. App. at 363, 361 S.E.2d at 312 (citing *In re Tadlock*, 261 N.C. 120, 134 S.E.2d 177 (1964)). Petitioner does not argue that the trial court applied the wrong standard of review, and we conclude that the court properly evaluated the Board's decision using a *de novo* standard of review. As a result, we will proceed to evaluate the issue of whether the construction of Petitioner's pro-

12. The record reflects that the other two large resort hotels located in Wrightsville Beach operate subject to conditional use permits. For that reason, among others, we are unable to agree with Petitioner's suggestion that its rights under the equal protection clause of the United States Constitution and the law of the land clause of the North Carolina Constitution have been violated because both of these resorts have parking decks.

13. Petitioner also argues that its proposed parking deck is a "structure" rather than a "building," that parking is an "accessory use" rather than a "principal use," and that its proposed parking deck is an "accessory structure" rather than a "principal structure." However, since we have concluded that "accessory uses" and "accessory structures" are not equivalent for purposes of the zoning ordinance, we need not address the extent to which Petitioner has correctly classified the proposed parking deck under the zoning ordinance.

posed parking deck would constitute the expansion of a noncon-
forming use on the merits.

§ 155.009(C)(1) of the zoning ordinance provides, in pertinent
part, that, "[e]xcept as specifically provided in this division (C), it
shall be unlawful for any person to engage in any activity that causes
an increase in the extent of nonconformity of a nonconforming sit-
uation. . . ." According to § 155.009(D), "[a] nonconforming use shall
not be changed to any but a use listed as permitted in the regulations
for the district in which the nonconforming use is located." In addi-
tion, § 155.005(B) of the zoning ordinance provides that:

> After May 15, 1972, land or structures, or the uses of land or
> structures which conform to [zoning] regulations . . . may be con-
> tinued. However, any structural alteration or change in use shall
> conform with the regulations specified in this chapter.

Moreover, § 155.009(I) of the zoning ordinance provides, in pertinent
part, that "[a]ny non-conforming building or structure, or any building
containing a non-conforming use, or any building or structure consti-
tuting a non-conforming situation which is voluntarily substantially
improved may only be rebuilt or altered so as to bring the structure
into complete conformity with this code." As a result, the relevant
provisions of the zoning ordinance clearly contemplate that any mod-
ifications to a non-conforming use are impermissible unless they
bring the non-conformity to an end. *Steagall*, 87 N.C. App. at 364, 361
S.E.2d at 312 (stating that the extent to which "an increase in the
intensity of the nonconforming activity is permissible" hinges upon a
proper interpretation of the zoning ordinance).

The construction of the proposed parking deck would clearly
result in the expansion of an existing nonconformity as that concept
is defined in the zoning ordinance. Given that the hotel's parking lot
is an existing area of nonconformity, the construction of the pro-
posed deck would result in an expansion of the existing nonconfor-
mity for several reasons, including the fact that Petitioner's proposed
deck would still not have the required number of parking spaces, in
violation of § 155.009(I), discussed above. Petitioner's reliance on
*Jirtle*, 175 N.C. App. at 182, 622 S.E.2d at 716 (holding that the con-
struction of a food pantry would not constitute the expansion of an
existing nonconforming use under an ordinance providing that "the
non-conforming use of land shall not be enlarged or increased, nor
shall any non-conforming use be extended to occupy a greater area
of land than that occupied by such use at the time of the passage of

the ordinance") is misplaced given the significant difference between the language of the ordinance at issue there and the language of the Wrightsville Beach ordinance. As a result, given the clearly expressed intent of the zoning ordinance to regulate construction and to avoid expansion of nonconforming uses, we conclude that the Board did not err by determining that the construction of the proposed four story parking deck would constitute an "expansion of a permitted non-conforming use."

Petitioner, however, argues that, since the proposed parking deck will "mitigate" the extent of the existing nonconformity by increasing the number of available parking spaces, the construction of the proposed parking deck cannot, as a matter of law, constitute the expansion of a nonconformity. At the hearing held before the trial court, Petitioner argued that:

> If we go and build a six-story building for parking and 200 spaces . . . I've eliminated all the nonconformity. Can I do that? If I want to do it, I can[.] . . . [A]nything that I do with a nonconforming structure that mitigates or reduces the nonconformity is legal[.] . . . [W]e can build a 10-story building or a eight-story building for parking[.] . . . (emphasis added).

"It is well settled that 'in construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results.' " *State v . Jones*, 359 N.C. 832, 837-38, 616 S.E.2d 496, 499 (2005) (quoting *Comm'r of Insurance v. Automobile Rate Office*, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978)). In essence, Petitioner contends that, as long as its proposed building tends to reduce the discrepancy between the required number of parking spaces and the number of parking spaces that is actually available, it has a right to build a "ten story building" for parking without obtaining an amendment to its conditional use permit, and regardless of its effect on the surrounding neighborhood. The adoption of such an argument, aside from its inconsistency with the literal language of the zoning ordinance, would lead to absurd results and justifies its rejection.

In addition, Petitioner argues that, under § 155.009(2) of the zoning ordinance, "where a nonconforming situation exists, change may be permissible if it changes the activity only in degree rather than a change in the kind of activity." The relevant provision actually states, however, that "[w]here a nonconforming situation exists, the equip-

ment or process may be changed, if these or similar changes amount only to changes in degree of activity rather than changes in kind of activity and no other violations of other provisions of this chapter occur." Thus, under the zoning ordinance in effect in Wrightsville Beach, the mere fact that an alteration effects a change in degree rather than a change in kind does not suffice to take the proposed alteration out from under the prohibition against expanding a non-conforming use.

In addition, we conclude that this provision of the zoning ordinance does not justify a finding that the proposed parking deck is not the impermissible expansion of a non-conforming use. Firstly, Petitioner does not assert that construction of the proposed parking deck would constitute a change in "equipment or process" or explain how a provision addressing changes in "equipment or process" applies to the construction of a parking deck. Secondly, in addition to ruling that construction of the proposed parking deck would constitute an improper expansion of a nonconforming use, the Board denied Petitioner's request on several additional grounds, such as the failure of the proposed parking deck to comply with landscaping and sprinkler requirements. As a result, the construction of the proposed parking deck is not permissible under § 155.009(2) of the zoning ordinance since the prerequisites for the application of the subsection simply do not exist. Thus, the trial court did not err by upholding the Board's determination that the construction of the proposed parking deck would constitute an impermissible expansion of an existing non-conforming use.

### 3. Judicial Estoppel

[3] Finally, Petitioner argues that the Board erred by ruling that Petitioner was judicially estopped from challenging the requirement that it obtain an amendment to its conditional use permit. Given our other holdings, we conclude that we need not address this issue.

"In its broadest and simplest sense, the doctrine of estoppel is a means of preventing a party from asserting a legal claim or defense which is contrary to or inconsistent with his prior actions or conduct." *Godley v. County of Pitt*, 306 N.C. 357, 360, 293 S.E.2d 167, 169 (1982). In this case, neither the Board nor the trial court declined to address Petitioner's challenge to the Town's ruling that it was required to obtain an amendment to its conditional use permit as a prerequisite for constructing its proposed parking deck. Furthermore, this Court has carefully considered and addressed

Petitioner's challenges to the trial court's order on the merits and concluded that the trial court correctly upheld the Board's ruling. Therefore, despite the Board's conclusion that Petitioner should be estopped from challenging the need for an amendment to its conditional use permit and the trial court's decision to affirm that determination, Petitioner has not been prevented from challenging the Town's determination before either the Board, the trial court, or this Court. As a result, we need not address Petitioner's challenge to the trial court's decision that Petitioner was judicially estopped from challenging the Town's determination that it was required to seek and obtain an amendment to its conditional use permit before constructing a proposed parking deck.[14]

### III.  Conclusion

Therefore, for the reasons discussed above, we conclude that the trial court did not err by upholding the Board's order affirming the decisions of the Town's zoning administrators to deny Petitioner's request to construct a parking deck without seeking and obtaining an amendment to its conditional use permit. Thus, the trial court's order should be, and hereby is, affirmed.

Affirmed.

Chief Judge MARTIN and Judge Robert C. HUNTER concur.

---

14. We also note that, because Petitioner did not challenge the trial court's decision to uphold the Board's determination that the Town had correctly concluded that the proposed parking deck did not comply with the landscaping ordinance in its brief, so that Petitioner has abandoned any right it may have had to contest that aspect of the trial court's decision.